**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAVOY SAVALAS STEED (deceased),<br>By and through His Next Friend<br>TOYA STEED and TOYA STEED | ) | |
| | )<br>) | |
| Plaintiffs | )<br>) | |
| | ) | CASE #:  4:17-CV-01440 HEA |
| V. | )<br>) | |
| MISSOURI STATE HIGHWAY PATROL | )<br>) | **JURY TRIAL DEMANDED** |
| AND | )<br>)<br>) | |
| MO STATE TROOPER<br>CPL. BRENT J. FOWLER # 782<br>(*In his individual and official capacity*) | )<br>)<br>)<br>) | |
| *AND* | )<br>) | |
| MO STATE TROOPER<br>TROOPER   J.A., ASHBY # 234<br>(*In his individual and official capacity*) | )<br>)<br>)<br>) | |
| AND | )<br>) | |
| THE CITY OF PEVELY, MISSOURI | )<br>) | |
| AND | )<br>) | |
| SGT. KYLE M. WEISS # 778 | )<br>) | |
| (*In her individual and official capacity*) | )<br>) | |
| AND | )<br>)<br>) | |
| P.O.  BRIAN BENJAMIN # 780<br>(*In his individual and official capacity*) | )<br>)<br>) | |
| Defendant(s) | | |

1

**FIRST AMENDED COMPLAINT**

**COMES NOW,** Plaintiff, LAVOY SAVALAS STEED (deceased), by and through his Next Friend TOYA STEED and TOYA STEED and undersigned counsel and First Amended Complaint and for the cause of action against Defendant(s) states as follows:

**INTRODUCTION**

1.      Toya Steed is the Natural Mother of the decedent and pursuant to Section 537.080.1 of the Revised Statutes of Missouri, Plaintiff is entitled to bring an action for the wrongful death of her son.

2.      The decedent, Lavoy Savalas Steed, was at the time of his death residing in St Louis County, Missouri.

3.      The decedent, Lavoy Savalas Steed, died on May 11, 2014 as a result of injuries sustained in a motor vehicle accident and was an innocent bystander in a police action, pursuit of a suspect traffic offense violator, the vehicle accident involved multiple fatalities.

**PARTIES**

4.      Defendant, MISSOURI STATE HIGHWAY PATROL is a law enforcement agency / political subdivision organized under the laws of the state of Missouri and operates the Missouri State Highway Patrol, law enforcement agency TROOP C in the State of Missouri.

5.      Defendant Missouri State Highway Patrol "MSHP" at all times relevant to this cause of action, is a properly organized municipality in the state of Missouri. For the

2

purposes of this action and in said capacity, Defendant MSHP is responsible for and administers the MSHP Troop # C, which in turn promulgates policies and practices in Troop C jurisdiction.

6.     Defendant MSHP, at all times relevant to this cause of action, runs, operates, oversees, administers, supervises, and is otherwise responsible for the conduct of MSHP Officers, including both acts and omissions of the officers.

7.     At all times relevant to this cause of action, Defendant, MSHP possessed the power and authority to adopt policies and prescribes rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers of  Pevely, and to assure that said actions, policies, rules, regulations, practices, and procedures of  MSHP and its employees comply with the laws and Constitutions of the United States and of the State Of Missouri.

8.     Defendant, CORPORAL BRENT J. FOWLER, # 782 at all times relevant to this cause of action, was a supervising Trooper, the rank of Corporal for the Missouri State Highway Patrol, TROOP C who acted under color of law and sued in his official and individual capacity.

9.     Defendant, TROOPER J.A.  ASHBY, # 234 at all times relevant to this cause of action, was a Law Enforcement Officer / State Trooper for the Missouri State Highway Patrol, TROOP C who acted under color of law and sued in his official and individual capacity.

10.     Defendant City of Pevely. Missouri, at all times relevant to this cause of action, is a properly organized municipality in the state of Missouri. For the purposes of this action and in said capacity, Defendant City of Pevely is responsible for and

administers the Pevely Police Department, which in turn promulgates policies and practices in Pevely.

11.     Defendant City of Pevely, at all time relevant to this cause of action, runs, operates, oversees, administers, supervises, and is otherwise responsible for the conduct of Pevely Police Officers, including both acts and omissions of the officers.

12.     At all times relevant to this cause of action, Defendant, City of  Pevely possessed the power and authority to adopt policies and prescribes rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers of  Pevely, and to assure that said actions, policies, rules, regulations, practices, and procedures of  Pevely Police Department and its employees comply with the laws and Constitutions of the United States and of the State Of Missouri.

13.     Defendant, SERGEANT KYLE M. WEISS, # 778 at all times relevant to this cause of action, was a supervising Officer, the rank of Sergeant for the Pevely Police Department who acted under color of law and sued in her official and individual capacity.

14.     Defendant, POLICE OFFICER BRIAN BENJAMIN, # 780 at all times relevant to this cause of action, was a Police Officer for the Pevely Police Department who acted under color of law and sued in his official and individual capacity.

## JURISDICTION

15.     This action is instituted and prosecuted under and by virtue of section 537.080 et. seq. R.S.Mo., commonly referred to as the Wrongful Death Statute, Plaintiff Toya Steed is the surviving natural parent of Plaintiff Lavoy Savalas Steed (deceased).

4

16.     Plaintiff brings this action pursuant to 42 U.S.C. Section 1983 and Section 1988 and the Fourth, Fourteenth Amendments to the United States Constitution.

17.     The Court has jurisdiction pursuant to 28 U.S.C. Section 1343, and 28 U.S.C. Section 1331. The court has supplemental jurisdiction to hear and decide claims arising under State law pursuant to 28 U.S.C. Section 1367.

## VENUE

18.     The events complained of occurred in the Eastern District of Missouri, in the Eastern Division and in accordance with 28 U.S.C. Section 1391.

## COLOR OF STATE LAW

19.     At all relevant times, Defendant's, the listed and named Police Officers and Missouri State Troopers were in official uniform and acting under color of law. Particularly, at all relevant times Defendant's acted under color of the laws, statutes, ordinances, regulations, policies, customs and usage of the State of Missouri, and their respective political subdivisions.

20.     Defendants by their actions and inactions, behaved with reckless disregard to a known, excessive risk of serious harm to Plaintiff, Lavoy Savalas Steed' safety and the conduct later described herein was deliberately indifferent to the health, safety, life and reasonable protections to an innocent bystander.

21.     The Officials and their agencies have an obligation to take reasonable measures to guarantee the safety of innocent bystanders; it was their multiplex failures to protect a citizen and take responsible and reasonable measures in their actions which are the proximate cause of Plaintiff's death.

22.     The intentional acts and inactions of the Defendants, all of them, posed a heightened serious danger of serious harm to Plaintiff and his death was reasonably avoidable, but for the intentional, reckless and careless actions and inactions of said defendants.

23.     Law Enforcement Officers, when high speed chases are involved, receive training for said high speed matters and must continually question whether the seriousness of the violation which stimulated the pursuit and the present danger to any innocent bystander, warrants continuation of any said high-speed pursuit and should abandon such a pursuit that endangers life.

24.     The vehicles used by the Defendant law enforcement officers were "emergency vehicles" as defined by Missouri Statute.

25.     In Missouri, Police pursuits "may exceed the prima facie speed limit so long as the driver does not endanger life". RSMo 304.022(5)(1) In this case, the Defendant Officers, exceeded the prima facie speed limit and endangered life when doing so, needlessly, recklessly and maliciously. Thereby violating the mandates of Missouri law.

26.     In Missouri, RSMo 304.012(1) provides, every person operating a motor vehicle…shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger life or limb of any person and shall exercise the highest degree of care. In this case, the Defendant Officers, violated the mandates of Missouri Law.

27.     Law Enforcement Officers must, in their constant deliberations of analysis of high speed chases, discontinue the pursuit when it becomes apparent that the pursuit itself presents a graver danger than letting the suspect of a minor traffic violation go.

28.     In addition to providing individuals a civil right of action against "persons" acting "under color of" State Law or Custom, United States Code Section 1983 also allows Plaintiff's to recover against Municipal employers—which are considered to be "persons" under said statute—when there is a direct casual link between a municipal policy or custom and an alleged constitutional deprivation.

## FACTS

29.     On Sunday, May 11, 2014 at approximately 4:45 p.m., MSHP (Defendant) Corporal Brent Fowler, # 782, "Fowler", while on duty and in a marked State Highway Patrol Vehicle, observed a Blue Ford Explore traveling north on Interstate I-55 traveling at a high rate of speed. Fowler then activated his speed radar equipment which confirmed that the Blue Explorer was in fact violating the speed limit, that is, the driver was in the commission of a traffic offense. Fowler, activated his emergency lights and siren in an attempt to stop the speeding vehicle.

30.     The vehicle at some point merged to the right shoulder. Fowler indicates that he observed a Black Male in the driver seat, (later identified as Jeromy L. Goode) and that said driver was conversing with the other occupants, (there were three (3) other occupants in the vehicle, one of which was plaintiff, Lavoy Steed). During this conversation observed by Fowler, he indicates that the driver (Jeremy) was waiving his hands in an agitated manner as he conversed with the other occupants.

31.     Jeremy, at some point, began to drive again and merged back into northbound I-55 traffic. Fowler began to pursue the vehicle for the traffic offense of speeding, which was the reason for the traffic stop.

32.     Trooper Fowler, pursued the suspect vehicle, at speeds reaching over 125 miles per hour to catch up to the suspect vehicle which had merged back onto the Interstate.

33.     At some point during the pursuit, Defendant Pevely Police Officer Brian Benjamin # 780, then activated his emergency equipment on his marked police cruiser and took the lead position in the pursuit, pursuing the suspect vehicle at speeds in excess of 80 miles per hour.

34.     At another point during the pursuit, Defendant Pevely Police Sergeant Kyle Weiss # 778, then activated her emergency equipment on her marked police cruiser and engaged the pursuit of the suspect vehicle at speeds in excess of 80 miles per hour.

35.     MSHP, Defendant, Trooper J.A. Ashby # 234, deployed a tire deflation device across lanes one and two, the suspect vehicle avoided the tire deflation device.

36.     The pursuit now reached speeds in excess of 90 miles per hour, traveling many miles.

37.     Another State Trooper, made another attempt to deploy a tire deflation device, again the suspect vehicle avoided the tire deflation device.

38.     Upon information and belief, there were over (3) attempts to deploy a tire deflation device, which was not successful and with each failed attempt, the speeds became more excessive and the driving of all operators became more dangerously erratic. These other deployment attempts were made by the Defendant agencies, both of them and their officers.

39.     Plaintiff, Lavoy Steed, was able to call his mother, Toya Steed during the pursuit and on the phone, he screamed to his mother, "Momma—this mutha fucka—got

us in a high-speed chase with the State Troopers and he won't let us out the car…! Please help…please help…"

40.     Plaintiff Toya Steed, then calls the 911, Trooper Dispatch and reported that the high-speed chase on I-55, is a vehicle her son was occupying and that the driver would not stop to let any of the passengers out. Ms Steed begged the 911 Dispatch to stop pursuing the vehicle, because she feared the vehicle would crash and her son could be seriously harmed. The 911 dispatch acknowledged that there was a high-speed chase in the area.

41.     Plaintiff Toya Steed then called her son back and screams to him to tell the driver to stop and let him out the car. Ms Steed hears her son screaming and yelling at the driver to "stop the damn car man!!!!! Please stop the car…let me the fuck out…Let me out…Stop running man, why the hell are you running from the police… man let me out!!!!!.... Momma he won't stop. He won't stop!!!... this mutha fucka is doing 100 miles per hour!!!!!"

42.     Ms Steed, frantically attempts to call the 911 dispatch again, as she can hear the pursuit is still ongoing and getting more dangerous as time passes. Unable to get through, Ms Steed calls her son back while her fiancé calls the 911 Trooper dispatch. Ms Steed hears her son begging and pleading with the driver to stop and let them out. Lavoy yells at Ms Steed "Momma he still won't stop are they going to stop chasing us? Are they going to stop chasing us...The faster they chase us..the faster this dude goes…please tell them to stop chasing us…so he will let us out the car…".; Ms Steed was paralyzed with fear, concerned for the safety of her son. Ms Steed was devastated to learn that while she

was on the phone line with her son during this high-speed chase, her son had loss his life in the instant, during the conversation.

43.     There was never a supervisor monitoring the pursuit to ensure that agency policy was obeyed. No supervisor monitoring the pursuit to evaluate the rapidly changing circumstances that could have terminated the pursuit. Agency policy require supervisors' engagement in such circumstance, for the safety of the officers, and bystanders that can or may be impacted by the escalating pursuit. There were multiple officers engaged in the pursuit therein 'caravanning' occurred which is also proscribed by agency policy as well as, the manner and frequency of the deployment of the tire deflation devices as well as the distance of the pursuit and the escalating speeds. To protect the innocent bystander; apprehension of an offender of a traffic violation is a second priority. Agency policy does not endorse such pursuits for minor traffic violations.

44.     Defendants vigorously and violently pursued the suspect vehicle and it was the pursuit of said vehicle and the manner in which said pursuit was engaged that was the proximate cause of said fatal motor vehicle crash. Therein, resulting in the death of Plaintiff an innocent bystander.

45.     The force used by Defendant Law Enforcement Officers and condoned by their respective Law Enforcement Agency(s) was applied maliciously, negligently and with deliberate indifference for the safety of and life of innocent bystanders and as such was applied for the very purpose and intent of causing harm. The use of force was unnecessary causing a wanton infliction of pain, emotional distress to family members in the zone of the circumstance.

46.     As a result of the unlawful force used against Plaintiff, he suffered the loss of his life resulting from the multiple and horrific injuries sustained, when he was violently ejected from the vehicle being pursued.

47.     Plaintiff, being an innocent bystander, the use of force and the nature of how said force was administered was indifferent to Plaintiff's rights and protections under the law as well were against the concepts of dignity, civilized standards, humanity and decency and the protection of life and well-being of an innocent bystander citizen.

48.     Defendant(s) in their actions refused to use reasonable decision making in their violent pursuit of a suspect whom was suspected of committing a minor traffic offense. Thereby demonstrating deliberate indifference to Plaintiff's right to be safe and secure in his person, free from seizure and to be protected from harm and loss of life as a result of police action directed at a suspect. Innocent Bystanders are not collateral damage, their lives have meaning, if not to law enforcement, then certainly to others and they warrant the greatest of care in dangerous situations involving police action.

49.     Due to the excessive force used by police, the excessive speeds and distance of said pursuit and the deliberate indifference to Plaintiff's safety and his life and the intent to harm, the fleeing suspect, Plaintiff suffered the ultimate loss - his life, which significantly and forever impacted and changed the lives of others.

## COUNT I

### VIOLATIONS OF THE 4th and 14th AMENDMENTs TO THE U.S. CONSTITUTION ACTIONABLE PURSUANT TO 42 U.S.C. SEC. 1983 (DUE PROCESS VIOLATION /UNREASONABLE SEIZURE) Against All Defendants

50.     Plaintiff Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

11

51.     The Fourth Amendment provides: "The right of people to be secured in their persons…against unreasonable…seizures, shall not be violated…but upon probable cause…"

52.     Defendants' actions violated the Fourth Amendment to the U.S. Constitution, which prohibits seizure without probable cause. Acting individually and in concert, Defendant's, through their own actions and/or omissions, engaged in an additional and unlawful seizure of Plaintiff, and then engaged in an unlawful use of force against Plaintiff when deploying Tire Deflation devices upon the occupied Plaintiff vehicle on multiple occasions at speeds that were much too dangerous for a safer deployment. Deployment under these circumstances was malicious and clearly at odds with department policy, by was consistent with the customs and policies and practices of Defendants and their respective department.  That said, the use of the Tire Deflation Devices constituted the use of deadly force against the suspect vehicle as well as against the innocent bystanders and passengers within said suspect vehicle.

53.     Alternatively, each Defendant in this Count failed to prevent the constitutional violations committed by the other.

54.     The acts and / or omissions of each Defendants were the legal and proximate cause of Plaintiff's catastrophic injuries, pains and death.

55.     As a direct and proximate result of the unreasonable seizure of Plaintiff, she suffered severe emotional pains and continues to suffer severe mental anguish and emotional distress.

56.     The acts of the Defendants each of them as described, were intentional, with the intent to harm, wanton, malicious, oppressive, reckless and callously indifferent

to the rights of Plaintiff and the life of Plaintiff, thus entitling the Plaintiff to an award of punitive damages against the individually named Defendants and their respective agencies.

57.     If Plaintiff prevails, she is entitled to an award of attorney's fees, pursuant to 42 U.S.C. Sec. 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant(s) jointly and severally for compensatory damages in an amount which is fair and reasonable; for punitive damages, for her costs incurred herein; for attorney's fees; and for such other and further relief as the Court deems just and proper.

## COUNT II

## VIOLATIONS OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION ACTIONABLE PURSUANT TO 42 U.S.C. SEC. 1983 (EXCESSIVE FORCE) Against All Defendants

58.     Plaintiff Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

59.     Plaintiff Steed was seized at the instant Defendants activated their emergency equipment in an effort to subject the suspect vehicle to its authority as a law enforcement officer. In addition, each separate moment the law enforcement authorities deployed and attempted force against said suspect vehicle, in that, each time there was an attempt to deploy 'spike strips' at speeds in excessive speeds, each act constituted a separate act of deadly force.

13

60.     The use of force, though ineffective, was still deployed. If a police officer deploys his firearm and discharges said firearm at a suspect and or subject, the fact that the officer may have missed the shot, in no way, diminishes the fact that force was used. Based upon the facts of the matter, the force may be deemed excessive and or justifiable, but in any fact matter, said force would be 'deadly'.

61.     At each of these moments, of deployment efforts, Plaintiff's Fourth Amendment rights to free and secure from unreasonable and excessive force, as applied to the states by the Fourteenth Amendment, were fully implicated.

62.     At these moments Plaintiff Lavoy Steed:

(a)     Had not committed a serious crime to warrant to use of force;

(b)     Presented no threat to the safety of the Officer or Others;

(c)     Was not actively resisting arrest;

(d)     Was not attempting to evade arrest by flight.

63.     In some cases, no use of force is permitted at all because none is required.

64.     The use of force by Defendants against Plaintiff Steed was excessive and objectively unreasonable under the circumstances.

65.     The use of force against Plaintiff Steed by Defendants was therefore in violation of Plaintiff Steed's rights protected by the Fourth Amendment to the United States Constitution.

66.     As a direct and proximate result of the unreasonable and excessive force used against Plaintiff, he suffered severe fatal injuries and Ms. Steed suffered pain and continues to suffer severe mental anguish and emotional distress.

67.     The acts of Defendants were intentional, with an intent to harm the suspect, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Plaintiff and to the life of Plaintiff, thus entitling the Plaintiff to an award of punitive damages against the individually named Defendants and their respective law enforcement agencies.

68.     If Plaintiff prevails, she is entitled to an award of attorney's fees, pursuant to 42 U.S.C. Sec. 1983.

WHEREFORE, Plaintiff prays for judgment against Defendants jointly and severally for compensatory damages in an amount which is fair and reasonable; for punitive damages, for her costs incurred herein; for attorney's fees; and, for such further relief as the Court deems just and proper.

## COUNT III

## MONELL MUNICIPAL LIABILITY/VIOLATION OF

## CONSTITUTIONAL RIGHTS- ACTIONABLE PURSUANT TO 42 U.S.C. SEC.

## 1983

## (AGAINST ALL DEFENDANTs)

69.     Plaintiff Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

70. The Listed Law Enforcement Agencies, as a municipal entity, through its law enforcement officers caused the constitutional violations described above.

71. The constitutional violations described above were done pursuant to "policy and practices" of the Defendants in this count.

72. At the time of these constitutional violations, Defendant had ratified customs and practices, which permitted and encouraged their police officers to unjustifiably, unreasonably and unlawfully seize persons without probable cause, use unreasonable and excessive force, in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution.

73. The customs, policies, practices and usages established by Defendants were the moving force behind the violations of Plaintiff's constitutional rights.

74. The Listed Law Enforcement Agencies allow and encourage their police officers to use unreasonable and excessive force against innocent bystanders and Officers do not engage in the reasonable protection of human life of innocent bystanders.

75. The conduct of Officers violated agency policy and rules and safety protocol and statutory mandates regarding the operation of emergency vehicles.

76. Upon information and belief, the acts of the Officers were part of a pattern of transgression, of which Defendant, The Law Enforcement Agencies knew or should have known. The failure of Defendants in this count to act proactively to prevent such a pattern of transgressions, and particularly to prevent the constitutional violations outlined herein, establishes the policy of the Defendant the Law Enforcement Agencies to condone or otherwise tolerate such constitutional violations.

77.     Said customs and practices also called for the Law Enforcement Agencies not to discipline, prosecute, or objectively and or independently investigate or in any way deal with or respond to the known incident.

78.     The policies, practices and customs described in this count were adopted and use of excessive force in effect unreasonably and or without due cause for doing so against Plaintiff with deliberate indifference to Plaintiff's constitutional rights and an intent to harm a fleeing suspect and causing damage to innocent bystanders and the rights of those similarly situated.

79.     Defendants the Law Enforcement Agencies herein are accountable under 42 U.S.C. Sec. 1983 because they, through their law enforcement officers, was deliberately indifferent to an obvious need to train Defendant Officers, respectively, to avoid constitutional violations arising from inadequate training pertaining to the lawful use of force against unarmed pretrial detainee's, the law pertaining to seizures and the use of excessive force, with an intent to harm.

80.     Those deficiencies caused Plaintiff damages.

81.     In light of the fact that it was Defendant Law Enforcement Officers of this cause, who engaged in the constitutional violations, the need to correct deficiencies are so obvious, and the inadequately so likely to result in the violation of constitutional rights, which policymakers of the municipality can reasonably be said to have deliberately indifferent to the need.

82.     Defendant listed in this count disregarded the obvious need for training on these matters and continued to retain and adhere to the constitutionally deficient training

programs despite an obvious need for training was carried out with deliberate indifference to the rights of Plaintiff and those similarly situated.

83.    The acts and or omissions of Defendant named in this count were the legal and proximate cause of Plaintiff's injuries as described herein.

WHEREFORE, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies of this Cause for compensatory damages and attorney's fees in an amount which is fair and reasonable; for interest, thereon; for her costs incurred herein; and, for such further relief as the Court deems just and proper. Plaintiff is requesting for punitive damages against the Defendant Police Officers and their respective employing agencies.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court will:

(a)    Assume jurisdiction of this cause to determine this controversy and case for hearing on the merits;

(b)    Award compensatory and actual damages to Plaintiff and against the Defendants, jointly and severally, in the amount that is fair and reasonable;

(c)    Award punitive damages to Plaintiff against individual Defendants Police Officers and their municipal Defendant agencies;

(d)    Award Plaintiff her costs and attorney's fees, pre-judgment interest, post-judgment interest, all other damages allowed by law; and such other and further relief the Court deems just and proper.

## COUNT IV

## WRONGFUL DEATH OF LAVOY SAVALAS STEED
## PURSUANT TO SECTION 1983

18

**(As for ALL DEFENDANTS)**

84.     Plaintiff Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

85.     Plaintiff and decedent, Lavoy Savalas Steed, at all times mentioned herein were citizens of the United States and residents of the State of Missouri.

86.     Plaintiff(s) Bring this cause of action pursuant to the United States Code, Title 42, Section 1983 et seq. to redress deprivation by the Defendants under color of state law of the rights, privileges, and immunities secured by the statutes and the constitution of the United States of America.

87.     Defendants, acting under color of state law, recklessly, with malice, in a gross intentional manner and with an intent to harm, and with deliberate indifference to Plaintiff and decedent's rights, privileges and immunities, failed to protect the decedent Lavoy Savalas Steed from harm and failed to provide the decedent with reasonable regard to his safety and life, as an innocent bystander.

88.     Defendants failed to follow their own internal policies and practices as well as statutory requirements and regulations designed to protect the decedent, and failed to provide him with the level of protection required by law.

89.     Defendants, through its servants carelessly, recklessly and with an intent to harm, failed to provide decedent the protection required by law enforcement harm and unskillfully, and intentionally pursued a suspect vehicle at enormously high rates of speed, at distances of many miles, engaging in various dangerous techniques for the rate of speed, subjecting the vehicle to lethal force, therein all of its occupants to said reckless

and malicious forces. In doing so failing to provide plaintiff, an innocent bystander, a reasonable level of protection required by law.

90.     The death of Lavoy Savalas Steed was directly caused by the carelessness, unskillfulness and recklessness, malice and harmful intentions of law enforcement creating and exacerbating a dangerous condition, making said condition even more dangerous and unsafe for an extended period of time. Defendants knew and or should have known by the exercise of reasonable care and deployment of authority that it was unsafe to innocent bystanders to engage in the conduct so engaged and that, law enforcement training alerts and requires police officers to constantly monitor a situation to determine if the dangerous pursuit and apprehension of a suspect outweighs the danger to a human life of an innocent bystander.

91.     The Employing Defendants failed to meet their obligations to train and monitor conditions and policies regarding the decision to pursue and or to continue to pursue a suspect for minor traffic offenses.

92.     That at all times mentioned herein Defendants acted negligently, recklessly, with gross negligence and deliberate indifference and with an intent to harm a suspect and collaterally the innocent bystanders in one or more of the following particular ways:

(a)     Failing to provide adequate training to its law enforcement officers regarding the pursuit of suspect vehicles and or the continued pursuit of suspect vehicles for minor traffic violations;

20

(b)      Failing to supervise its officers during situations of danger and or increasing danger that pose a risk to serious physical injury and or death for minor offenses and or offenses that do not warrant the use of deadly and or excessive forces;

(c)      Carelessly and recklessly failing to provide adequately for the safety and well-being and life of an innocent bystander;

(d)      Carelessly and recklessly ignoring the communications of another witness to a serious matter, and heeding the pleas of a family member reporting said dangerous and unsafe condition and facts;

(e)      Failing to adequately train, supervise and monitor employees and other staff members;

(f)      Failing to adopt a comprehensive fatality prevention process for pursuits that involve innocent bystanders and exposes said bystanders to the high probability of death and or serious physical injury.

(g)      Operating emergency vehicles in violation of statutory mandates for pursuits.

(h)      Operating emergency vehicles in violation of statutory mandates which limit the speed said driver accomplishes, as to not endanger life. RSMo 304.022(5)(2)(c)

(i)      Failing to properly and accurately report a police matter. As in this case, the Police Reports of the matter, in material ways, is inconsistent with the audio and video captured involving this matter thus far.

93.      As a direct result of the actions and inactions of Defendants, the decedent, Lavoy Savalas Steed sustained catastrophic injuries as a result of the violent motor

21

vehicle crash which ultimately decedent succumb to the severity of his injuries and did die on May 11, 2014.

94.     The decedent, Lavoy Savalas Steed, was caused to suffer physical and mental pain, from his injuries until his death, and was deprived of life and liberty as a result of Defendants' actions and or inactions.

95.     Plaintiffs are entitled to recover damages in excess of the minimum jurisdictional limits of this court.

96.     At all times mentioned herein, the circumstances given rise to the death of Lavoy Savalas Steed, were attended by aggravating circumstances in that the acts of Defendants were grossly negligent, reckless, careless, imprudent, excessive and with an intent to harm and totally without though as to the safety and welfare of innocent bystanders and with complete indifference to or conscious disregard to the safety of others.

97.     WHEREFORE, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies of this Cause for compensatory damages and attorney's fees in an amount which is fair and reasonable; for interest, thereon; for her costs incurred herein; and, for such further relief as the Court deems just and proper. Plaintiff is requesting for punitive damages against the Defendant Police Officers and their respective employing agencies.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court will:

(a)     Assume jurisdiction of this cause to determine this controversy and case for hearing on the merits;

(b)     Award compensatory and actual damages to Plaintiff and against the

Defendants, jointly and severally, in the amount that is fair and reasonable;

(c)     Award punitive damages to Plaintiff against individual Defendants Police

Officers and their municipal Defendant agencies;

(d)     Award Plaintiff her costs and attorney's fees, pre-judgment interest, post-

judgment interest, all other damages allowed by law; and such other and further relief the

Court deems just and proper.

## COUNT V

## ACTION FOR NEGLIGENCE

### (As and Against All Defendants)

98.     Plaintiff Steed re-alleges and incorporates by reference, as though fully

contained herein, all preceding allegations set forth above.

99.     Defendants the Missouri State Highway Patrol and the City of Pevely

Police Department and their members, have a duty to provide responsible, effective

operation of the law enforcement departments and they have a duty to set the policies and

safety protocols for the respective police departments.

100.    Said law enforcement officers have a duty not to operate emergency

vehicles at excessive speeds if said speeds endanger life.

101.    The death of Lavoy Savalas Steed was directly and proximately caused by

the gross negligence, malice, carelessness and recklessness of the Defendants, Corporal

Fowler Trooper Ashby, Sergeant Weiss and Officer Benjamin, Defendant Missouri State

Highway Patrol, Troop C and The City of Pevely by way of Its Police Department and,

its members, by pursuing a suspect vehicle, wherein decedent was an innocent bystander and was negligent per se in that they:

(a)     The defendants violated the Missouri Statutes "Which prohibit law enforcement officers to use deadly force to affect the arrest against a person who may have committed a misdemeanor or lessor offense; deadly force is only permitted to affect the arrest of a person who committed a felony if the person has been notified that he or she is under arrest and if the force used is restricted to that reasonably necessary to effect the arrest";

(b)     Defendants negligently, with malice, recklessly and carelessly deprived decedent Lavoy Savalas Steed of his equal protection of laws in violation with the 14th Amendment of the Constitution of the United States;

(c)     Defendants negligently, recklessly, carelessly and with an intent to harm inflicted pains, suffrage upon decedent, an innocent bystander of police action;

(d)     Defendants negligently, recklessly and carelessly violated police department policy, procedures and standards.

(e)     Defendants, with malice, violated the duty owed to the life of Plaintiff, by operating emergency vehicles at excessive speeds which endangered life and the manner in which, they used force against said vehicle and its innocent bystanders.

102.     As a direct result of the aforesaid negligence, recklessness and carelessness of the Defendants agents, servants, and employees Lavoy Savalas Steed was caused to die.

103.     Plaintiffs prays for pre-judgment interest pursuant to section 408.040 RSMo.

24

WHEREFORE, Plaintiffs prays for judgment against Defendants and each of them in a sum in excess of 75,000.00 and for such further and equitable relief that this court deems just and proper together with prejudgment interest.

## COUNT VI

## TOYA STEED'S ACTION FOR LOSS OF FILIAL CONSORTIUM

104.    Plaintiff Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

105.    As provided, Toya Steed is the Natural Mother of Lavoy Savalas Steed. Lavoy was the eldest child of Ms Steed.

106.    As a direct result of the death of Lavoy, Ms Steed has sustained damages including but not limited to the loss of services, society and companionship, financial support and household chores.

107.    The conduct of Defendants as described herein was reckless, in conscious disregard, demonstrated an intent to harm and showed a complete indifference to the safety of Lavoy Savalas Steed, as an innocent bystander of a police action, thereby entitling Plaintiff to punitive damages to punish Defendants and deter them and others from like conduct.

WHEREFORE, Plaintiffs prays for judgment against the Defendants for compensatory damages in an amount which is in excess of 75,000.00, for punitive damages and other relief just and proper.

## COUNT VII

## TOYA STEED'S COUNT FOR INTENTIONAL INFLICTION OF EMTOTIONAL DISTRESS

108.    Plaintiff Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

109.    As provided, Toya Steed is the Natural Mother of Lavoy Savalas Steed. Lavoy was the eldest child of Ms Steed.

110.    As for this Count in this cause of action, The Defendants acted intentionally and recklessly and said conduct was extreme and outrageous.

111.    Defendants conduct was the cause of avoidable death of her son and the severe emotional distress she suffers.

112.    The conduct of Defendants as described herein was reckless, outrageous, in conscious disregard, demonstrated an intent to harm and showed a complete indifference to the safety and life of Lavoy Savalas Steed, as an innocent bystander of a police action, thereby entitling Plaintiff to punitive damages to punish Defendants and deter them and others from like conduct.

WHEREFORE, Plaintiffs prays for judgment against the Defendants for compensatory damages in an amount which is in excess of 75,000.00, for punitive damages and other relief just and proper.

Respectfully submitted,

/s/ Christopher B. Bent, # 45875
Law Office of Christopher Bent, LLC
2200 West Port Plaza Drive
Suite # 306
St. Louis, MO 63146
Phone: (314) 439-0287
Fax:    (314) 558-2622

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this _____day of September, 2017, the foregoing was electronically submitted and deposited postage prepaid, U.S.P.S addressed to:


Office of The Missouri Attorney General
Robert J. Isaacson
Assistant Attorney General
P.O. Box # 861
St. Louis, MO 63188

ATTY for MSHP Defendants

And

PAUL CAMAZINE & BLUMENTHAL, P.C.
D. Keith Henson, Esq.
165 N. Meramec, Ave., Suite # 110
Clayton, MO 63105
ATTY for City of Pevely Defendants


_/s/_ Christopher Bent,