**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAVOY SAVALAS STEED (deceased), | ) | |
| By and through His Next Friend | ) | |
| TOYA STEED and TOYA STEED | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE No: 4:17-CV-01440 HEA |
| v. | ) | |
| | ) | |
| MISSOURI STATE HIGHWAY PATROL; | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MO STATE TROOPER; | ) | |
| CPL. BRENT J. FOWLER # 782 | ) | |
| (*In his individual and official capacity*); | ) | |
| | ) | |
| MO STATE TROOPER | ) | |
| TROOPER  J.A., ASHBY # 234 | ) | |
| (*In his individual and official capacity*); | ) | |
| | ) | |
| THE CITY OF PEVELY, MISSOURI; | ) | |
| | ) | |
| SGT. KYLE M. WEISS # 778 | ) | |
| (*In her individual and official capacity*) | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| P.O.  BRIAN BENJAMIN # 780 | ) | |
| (*In his individual and official capacity*) | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SECOND AMENDED COMPLAINT

**COMES NOW,** Plaintiff, LAVOY SAVALAS STEED (deceased), Next Friend

TOYA STEED and TOYA STEED by and through the undersigned counsel of record

and for their Second Amended Complaint states as follows:

1

## INTRODUCTION

1.      Toya Steed is the Natural Mother of the decedent and pursuant to Section 537.080.1 of the Revised Statutes of Missouri, Plaintiff is entitled to bring an action for the wrongful death of her son.

2.      The decedent, Lavoy Savalas Steed, was at the time of his death residing in St Louis County, Missouri.

3.      The decedent, Lavoy Savalas Steed, died on May 11, 2014 as a result of injuries sustained in a motor vehicle accident and was an innocent bystander in a police action, pursuit of a suspect traffic offense violator, the vehicle accident involved multiple fatalities.

## PARTIES

4.      Defendant, MISSOURI STATE HIGHWAY PATROL is a law enforcement agency / political subdivision organized under the laws of the state of Missouri and operates the Missouri State Highway Patrol, law enforcement agency TROOP C in the State of Missouri.

5.      Defendant Missouri State Highway Patrol "MSHP" at all times relevant to this cause of action, is a properly organized municipality in the state of Missouri. For the purposes of this action and in said capacity, Defendant MSHP is responsible for and administers the MSHP Troop # C, which in turn promulgates policies and practices in Troop C jurisdiction.

6. Defendant MSHP, at all times relevant to this cause of action, runs, operates, oversees, administers, supervises, and is otherwise responsible for the conduct of MSHP Officers, including both acts and omissions of the officers.

7. At all times relevant to this cause of action, Defendant, MSHP possessed the power and authority to adopt policies and prescribes rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers of MSHP, and to assure that said actions, policies, rules, regulations, practices, and procedures of MSHP and its employees comply with the laws and Constitutions of the United States and of the State Of Missouri.

8. Defendant, CORPORAL BRENT J. FOWLER, # 782 at all times relevant to this cause of action, was a supervising Trooper, the rank of Corporal for the Missouri State Highway Patrol, TROOP C who acted under color of law and sued in his <u>official and individual</u> capacity.

9. Defendant, TROOPER J.A. ASHBY, # 234 at all times relevant to this cause of action, was a Law Enforcement Officer / State Trooper for the Missouri State Highway Patrol, TROOP C who acted under color of law and sued in his <u>official and individual</u> capacity.

10. Defendant City Of Pevely. Missouri, at all times relevant to this cause of action, is a properly organized municipality in the state of Missouri. For the purposes of this action and in said capacity, Defendant City of Pevely is responsible for and administers the Pevely Police Department, which in turn promulgates policies and practices in Pevely.

11. Defendant City Of Pevely, at all time relevant to this cause of action, runs, operates, oversees, administers, supervises, and is otherwise responsible for the conduct of Pevely Police Officers, including both acts and omissions of the officers.

12. At all times relevant to this cause of action, Defendant, City of Pevely possessed the power and authority to adopt policies and prescribes rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers of Pevely, and to assure that said actions, policies, rules, regulations, practices, and procedures of Pevely Police Department and its employees comply with the laws and Constitutions of the United States and of the State Of Missouri.

13. Defendant, SERGEANT KYLE M. WEISS, # 778 at all times relevant to this cause of action, was a supervising Officer, the rank of Sergeant for the Pevely Police Department who acted under color of law and sued in the <u>official and individual</u> capacity.

14. Defendant, POLICE OFFICER BRIAN BENJAMIN, # 780 at all times relevant to this cause of action, was a Police Officer for the Pevely Police Department who acted under color of law and sued in his <u>official and individual</u> capacity.

15. At all times mentioned herein, the MSHP personnel acted while driving a MSHP-owned vehicle within the course and scope of their employment with the MSHP. The MSHP is liable for the negligent and violative acts of its employees as said acts arise out of the operation of a motor vehicle by public employees within the course of their employment.

16. Sovereign immunity is waived pursuant to RSMo 537.600,et seq.

17.     Upon information and belief, Defendant MSHP has purchased liability insurance for the types of incidents alleged in this Complaint.

18.     At all times mentioned herein, the City of Pevely personnel acted while driving a City of Pevely-owned vehicle within the course and scope of their employment with the City of Pevely. The City of Pevely is liable for the negligent and violative acts of its employees as said acts arise out of the operation of a motor vehicle by public employees within the course of their employment.

19.     Sovereign immunity is waived pursuant to RSMo 537.600, et seq.

20.     Upon information and belief, Defendant City of Pevely has purchased liability insurance for the types of incidents alleged in this Complaint.

21.     The MSHP Defendants as well as The City of Pevely Defendants, for their official acts, have engaged in conduct that violated clearly established statutory and constitutional rights of which a reasonable person would have known. As such, there is no Qualified Immunity available to these parties.

22.     The 14th Amendment, Equal Protection Clause of the United States Constitution specifically and unequivocally prohibits discrimination and or a denial of the equal protection of the law, based upon race, when practiced by the government. That said, the State and Municipal Government entities (MSHP) and (The City Pevely) is subject to suit in the federal courts, as any such federal immunity is abrogated by the United States Constitution.

## JURISDICTION

23.    This action is instituted and prosecuted under and by virtue of section 537.080 et. seq. RSMo., commonly referred to as the Wrongful Death Statute, Plaintiff Toya Steed is the surviving natural parent of Plaintiff Lavoy Savalas Steed (deceased).

24.    Plaintiff brings this action pursuant to 42 U.S.C. Section 1983 and Section 1988 and the Fourth, Fifth, Fourteenth Amendments to the United States Constitution, to include violations of the Equal Protection Clause Act of the Constitution.

25.    The Court has jurisdiction pursuant to 28 U.S.C. Section 1343, and 28 U.S.C. Section 1331. The court has supplemental jurisdiction to hear and decide claims arising under State law pursuant to 28 U.S.C. Section 1367.

## VENUE

26.    The events complained of occurred in the Eastern District of Missouri, in the Eastern Division and in accordance with 28 U.S.C. Section 1391.

## COLOR OF STATE LAW

27.    At all relevant times, Defendant's, the listed and named Police Officers and Missouri State Troopers were in official uniform and acting under color of law. Particularly, at all relevant times Defendant's  acted under color of the laws, statutes, ordinances, regulations, policies, customs and usage of the State of Missouri, and their respective political subdivisions.

28.    Defendants by their actions and inactions, behaved with reckless disregard to a known, excessive risk of serious harm to Plaintiff, Lavoy Savalas Steed' safety and the conduct later described herein was deliberately indifferent to the health, safety, life and reasonable protections to an innocent bystander.

29.     The Officials and their agencies have an obligation to take reasonable measures to guarantee the safety of innocent bystanders and persons subject to law enforcement authority and constructive custody; it was their multiplex failures to protect a citizen and take responsible and reasonable measures in their actions which are the proximate cause of Plaintiff's death.

30.     The intentional acts and inactions of the Defendants, all of them, posed a heightened serious danger of serious harm to Plaintiff and his death was reasonably avoidable, foreseeable, but for the intentional, reckless, careless and deliberately indifferent actions and inactions of said defendants.

31.     Law Enforcement Officers, when high speed chases are involved, receive training for said high speed matters and must continually question whether the seriousness of the violation which stimulated the pursuit and the present danger to any innocent bystander, warrants continuation of any said high-speed pursuit and should abandon such a pursuit that endangers life of the public or an innocent passenger, whom is not committing a criminal offense, suspected of committing a criminal offense nor is in anyway resisting police authority.

32.     Law Enforcement Officers have a duty to protect the life and safety of any and all person(s) subject to their police authority while in the constructive or actual physical custody of law enforcement, when law enforcement officers impose a limitation upon said person(s) freedom to act on his own behalf. This duty arises when law enforcement personnel <u>enhances the danger</u>  or where law enforcement personnel has done something which <u>created the danger</u> to said person(s).

33.     The vehicles used by the Defendant law enforcement officers were "emergency vehicles" as defined by Missouri Statute.

34.     In Missouri, Police pursuits "**may exceed the prima facie speed limit so long as the driver <u>does not endanger life</u>**". RSMo 304.022(5)(1).  In this case, the Defendant Officers, exceeded the prima facie speed limit and endangered life when doing so, needlessly, recklessly, maliciously and with deliberate indifference to the protections and rights of plaintiff. Thereby violating the mandates of Missouri law.

35.     Missouri State Law enforcement is to **"place the <u>highest value</u> on <u>human life</u> and <u>safety</u> of the public…"** General Order 01-04-1552.

36.     In Missouri, RSMo 304.012(1) provides, Every person operating a motor vehicle…**shall drive the vehicle in a careful and prudent manner and at a rate of speed so as <u>not to endanger life</u>** or limb of <u>any person</u> and shall exercise the highest degree of care. In this case, the Defendant Officers, violated the mandates of Missouri Law.

37.     Law Enforcement Officers must, in their constant deliberations of analysis of high-speed chases, discontinue the pursuit when it becomes apparent that the pursuit itself presents a graver danger than letting the suspect of a minor traffic violation go.

38.     State Law enforcement officers when addressing a moving vehicle are required to "carefully weigh the immediate need for such action against the potential danger to **any innocent persons in the area, including any occupants in the suspect vehicle who are not engaged in criminal or threatening behavior.**" [General Order 01-04-1552 (H)]. That said, Missouri State Law enforcement officers have a specific duty to

protect the safety of innocent persons, to include, passengers who occupy an alleged suspect vehicle.

39. In addition to providing individuals a civil right of action against "persons" acting "under color of" State Law or Custom, United States Code Section 1983 also allows Plaintiff's to recover against Municipal employers—which are considered to be "persons" under said statute—when there is a direct casual link between a municipal policy or custom and an alleged constitutional deprivation.

## FACTS

40. On Sunday, May 11, 2014 at approximately 4:45 p.m., MSHP (Defendant) Corporal Brent Fowler, # 782, "Fowler", while on duty, in a supervisory capacity, and in a marked State Highway patrol Vehicle, observed a Blue Ford Explore traveling north on Interstate I-55 traveling at a high rate of speed. Fowler then activated his speed radar equipment which confirmed that the Blue Explorer was in fact violating the speed limit, that is, the driver was in the commission of a traffic offense. Fowler activated his emergency lights and siren in an attempt to stop the speeding vehicle.

41. The vehicle at some point merged to the right shoulder coming to a full stop in response to the police authority exhibited by the MSHP Trooper. Fowler indicates that he observed a "Black Male" in the driver seat, (later identified as Jeromy L. Goode) and that said driver was conversing with the other occupants, (there were three (3) other occupants in the vehicle, one of which was plaintiff, Lavoy Steed). During this conversation observed by Fowler, he indicates that the driver (Jeremy) was waiving his hands in an agitated manner as he conversed with the other occupants. Trooper Fowler, upon information and belief, acknowledged the presence of other passengers in the Ford

Explorer, initially identifying them as "black males". This supervising Trooper, along with the description of the vehicle, had the Vehicle Driver's License Plate Information thereby (an ability to identify the owner of the vehicle and an ability to identify the driver of the driver of the vehicle).

42.     Jeremy, at some point, began to drive again and merged back into northbound I-55 traffic. Fowler began to pursue the vehicle for the traffic offense of speeding, which was the reason for the traffic stop.

43.     Trooper Fowler pursued the suspect vehicle, at speeds reaching over 125 miles per hour to catch up to the suspect vehicle which had merged back onto the Interstate. The distance between the Trooper Fowler and the Ford Explorer had increased from approximately 1 car length to over 3 miles.

44.     The driver of the Ford Explorer was observed by Trooper Fowler, to be driving erratically, swerving in and out of traffic and between other third party-vehicles.

45.     Upon information and belief, After approximately a few minutes of the beginning of the pursuit, Trooper Fowler was advised by Troop Headquarters that, "We are done. We are terminating if he [the Ford Explorer] is driving like that [driving between third -party vehicles]." Despite this, Trooper Fowler continued pursuit.

46.     Upon information and belief, The MSHP did not request the assistance of any other law enforcement agency, regarding the herein traffic stop / pursuit.

47.     Upon information and belief, a City of Pevely, Police Officer (Benjamin Litterall) intervened and joined the pursuit with the MSHP, in the City of Herculaneum, MO, though no such request to assist was made by the MSHP.

48.     The City of Herculaneum, MO is outside the jurisdiction of the City Of Pevely, which is a fourth-class City in the State of Missouri.

49.     At some point during the pursuit, Defendant Pevely Police Officer Brian Benjamin # 780, then activated his emergency equipment on his marked police cruiser and took the lead position in the pursuit, pursuing the suspect vehicle at speeds in excess of 80 miles per hour.

50.     At another point during the pursuit, Defendant Pevely Police Sergeant Kyle Weiss # 778, then activated emergency equipment on the marked police cruiser and engaged the pursuit of the suspect vehicle at speeds in excess of 80 miles per hour.

51.     Upon information and belief, Sgt. Weiss, after engaging pursuit, radio malfunctioned, severing communication with other law enforcement units involved in the pursuit. Sergeant Weiss continued pursuit despite this.

52.     MSHP, Defendant, Trooper J.A. Ashby # 234, deployed a tire deflation device across lanes one and two, the suspect vehicle avoided the tire deflation device.

53.     The pursuit now reached speeds in excess of 90 miles per hour, traveling many miles.

54.     Another State Trooper made another attempt to deploy a tire deflation device, again the suspect vehicle avoided the tire deflation device.

55.     Upon information and belief, there were over (3) attempts to deploy a tire deflation device, which was not successful and with each failed attempt, the speeds became more excessive and the driving of all operators{suspect and law enforcement} became more dangerously erratic. These other deployment attempts were made by the Defendant agencies, both of them and their officers.

56.     The deployments of spike strips, caused the Ford Explorer to swerve wildly, forcing third-party vehicles onto the shoulder and nearly causing collisions. Despite this, the pursuit continued.

57.     Approximately 150 third party vehicles were passed during the pursuit, the majority passed in the final moments of the pursuit.

58.     The total pursuit lasted over a quarter hour and covered over twenty-five miles of interstate highway.

59.     Defendants had ample opportunity for deliberation during the pursuit.

60.     Multiple law enforcement vehicles, prior to the crash, in this pursuit were engaged in the herein improper pursuit conduct, in caravanning nature.

61.     As the pursuit progressed, the Ford Explorer drove at higher speeds and his driving became increasingly erratic in response to law enforcement.

62.     As the pursuit progressed, traffic density increased.

63.     As the pursuit progressed, officers utilized increasingly more dangerous tactics.

64.     As the pursuit progressed, law enforcement, repeatedly pursued the Ford Explorer so closely that they could not ensure proper time and braking distance, thereby enhancing the danger to the innocent subjects to police authority as well as other third parties.

65.     Law enforcement had no reasonable expectation of safely stopping the Ford Explorer through continued pursuit.

66.     Law enforcement repeatedly and knowingly provoked increasingly hazardous driving by the pursued vehicle.

67.     Law enforcement continued the pursuit when the level of risk associated with the pursuit outweighed the necessity of immediate apprehension of the suspect.

68.     Law enforcement aggressively engaged the suspect vehicle and engaged in unduly hazardous driving maneuvers, including failure to maintain a safe driving distance, and driving at unreasonable speeds based upon the totality of the circumstance.

69.     Law enforcement failed to comply and or exceeded emergency vehicle traffic law exceptions allowed under RSMo 304.022(5).

70.     Plaintiff, Lavoy Steed, was able to call his mother, Toya Steed during the pursuit and on the phone, he screamed to his mother, "Momma—this mutha fucka—got us in a high-speed chase with the State Troopers and he won't let us out the car…!..Please help…please help…"

71.     Plaintiff  Toya Steed, then calls the 911, Trooper Dispatch and reported that the high-speed chase on I-55, is a vehicle her son was occupying and that the driver would not stop to let any of the passengers out. Ms Steed begged the 911 Dispatch to stop pursuing the vehicle, because she feared the vehicle would crash and her son could be seriously harmed. The 911 dispatch acknowledged that there was a high-speed chase in the area. Despite this, the pursuit continued.

72.     Plaintiff  Toya Steed then called her son back and screams to him to tell the driver to stop and let him out the car. Ms Steed hears her son screaming and yelling at the driver to "stop the damn car man!!!!! Please stop the car…let me the fuck out…Let me out…Stop running man, why the hell are you running from the police… man let me out!!!!!....Momma he won't stop..he won't stop!!!... this mutha fucka is doing a 100 miles per hour!!!!!"

73.     Ms. Steed frantically attempts to call the 911 dispatch again, as she can hear the pursuit is still ongoing and getting more dangerous as time passes. Unable to get through, Ms Steed calls her son back while her fiancé calls the 911 Trooper dispatch. Ms Steed hears her son begging and pleading with the driver to stop and let them out. Lavoy yells at Ms Steed "Momma he still won't stop are they gonna stop chasing us? Are they gonna stop chasing us?...The faster they chase us..the faster this dude goes…please tell them to stop chasing us…so he will let us out the car…".; Ms Steed was paralyzed with fear, concerned for the safety of her son. Ms Steed was devastated to learn that while she was on the phone line with her son during this high-speed chase, her son had loss his life in the instant, during the conversation.

74.     The more reckless law enforcement pursued the Ford Explorer, the more reckless the Ford Explorer did flee. Despite this, the pursuit continued.

75.     There was never a responsible supervisor monitoring the pursuit, to ensure that agency policy was obeyed. No responsible supervisor monitoring the pursuit to evaluate the rapidly changing circumstances that could have terminated the pursuit. Agency policy require supervisors' engagement in such circumstance, for the safety of the officers, and bystanders that can or may be impacted by the escalating pursuit. There were multiple officers engaged in the pursuit therein 'caravanning' occurred which is also proscribed by agency policy as well as, the manner and frequency of the deployment of the tire deflation devices as well as the distance of the pursuit and the escalating speeds. To protect the innocent bystander; apprehension of an offender of a traffic violation is a, second priority. Agency policy does not endorse such pursuits for minor traffic violations.

76.     Based on information and belief, The Defendant supervising law enforcement personnel directly involved in the pursuit of the Ford Explorer knew that there were violations of the official policy and procedure regarding the pursuit and knowing consented to violating said policy and procedures for other subordinate officers involved in the pursuit. Not to mention, there own direct violations of said policy and procedures while pursuing said Ford explorer.

77.     Defendants vigorously and violently pursued the suspect vehicle and it was the pursuit of said vehicle and the manner in which said pursuit was engaged that was the proximate cause of said fatal motor vehicle crash. Therein, resulting in the death of Plaintiff an innocent bystander and passenger in a moving suspect vehicle.

78.     The force used by Defendant Law Enforcement Officers and condoned by their respective Law Enforcement Agency(s), was consistent with their respective practices, policies and or customs and was applied maliciously, negligently and with deliberate indifference for the safety of and life of innocent bystanders and as such was applied for the very purpose and intent of causing harm. The use of force was unnecessary causing a wanton infliction of pain, emotional distress to family members in the zone of the circumstance.

79.     As a result of the unlawful force used against Plaintiff, he suffered the loss of his life resulting from the multiple and horrific injuries sustained, when he was violently ejected from the vehicle being pursued.

80.     Plaintiff, being an innocent bystander, the use of force and the nature of how said force was administered was indifferent to Plaintiff's rights and protections under the law as well were against the concepts of dignity, civilized standards, humanity

and decency and the protection of life and well-being of an innocent bystander, subjected to police authority and any form of police custody.

81.    Defendant(s) in their actions refused to use reasonable decision making in their violent pursuit of a suspect whom was suspected of committing a minor traffic offense. Thereby demonstrating deliberate indifference to Plaintiff's right to be safe and secure in his person, free from seizure and to be protected from harm and loss of life as a result of police action directed at a suspect. Innocent Bystanders are not collateral damage, their lives have meaning, if not to law enforcement, then certainly to others and they warrant the greatest of care in dangerous situations involving police action.

82.    Due to the excessive force used by police, the excessive speeds, reckless driving techniques and distance of said pursuit and the deliberate indifference to Plaintiff's safety and his life and the intent to harm, the fleeing suspect, Plaintiff suffered the ultimate loss, his life, which impacted the lives of others.

83.    Mr. Lavoy Steed completely submitted to all displays of authority and force by law enforcement at all times relevant. Mr. Lavoy Steed's freedom of movement was restricted by law enforcement's shows of authority, shows of force, application of force, and the foreseeable reactions of third parties to the actions of Defendants.

84.    The cite of the motor vehicle crash of this cause, was Northbound Interstate 55 at the Imperial Main Street exit, a roadway in Jefferson County, Missouri and is outside the jurisdiction of Pevely Missouri.

85.    Upon information and belief, at the crash scene, law enforcement officers, engaged in celebratory type conduct, exclaiming "we got them"!. However, the black males, were deceased, the intent was to get them at any cost, which includes serious

physical injury up to and including death; law enforcement breached its duty to protect the life and or limb of an innocent person, which includes a passenger within a moving vehicle under any form of custody of law enforcement, subject to police action.

86.     Upon information and belief, law enforcement officers have been indoctrinated to believe 'blacks' are inherently evil, that blacks are either in the commission of a crime and or immediate law enforcement intervention is always required to thwart a crime. This ideology supports the pattern, practice and or custom of compelling, a by- any- means to 'get them' mentality, even if to get them means a resulting fatal circumstance.

87.     This ideology explains why <u>Law Enforcement Disparity Reports</u> in the State Of Missouri, pursuant to <u>Revised Missouri Statute 590.060</u>, clearly indicate, Black Motorist are 85% more likely to be pulled over by law enforcement in Missouri; that Black Motorist are 51% more likely than whites to be searched after a traffic stop and at a higher percent arrested after traffic stops than whites, though whites during the traffic stops, at a higher rate than blacks are discovered to be in possession of drugs or contraband. Blacks are more aggressively pursued and engaged by law enforcement and there is no legitimate governmental interest that supports or justifies the disparity in treatment between these classifications. Thereby a violation of the Equal Protection Act of the U.S. Constitution.


**COUNT I**

**VIOLATIONS OF THE 4<sup>TH,</sup> 5TH  AND 14TH  AMENDMENTS TO THE U.S. CONSTITUTION ACTIONABLE PURSUANT TO 42 U.S.C. SEC. 1983 DUE PROCESS, RIGHT TO LIFE AND BODILY INTEGRITY/ UNREASONABLE SEIZURE**

**AGAINST ALL DEFENDANTS**

88.     Plaintiff Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

89.     Defendants are persons for the purposes of a Section 1983 action for damages.

90.     At all times material hereto, the Defendants actions/and or inactions were taken under color of authority of law as law enforcement officers for the respective law enforcement agencies.

91.     Upon the Ford Explorer's initial full and complete stop in response to the traffic stop, decedent, Lavoy Steed, was seized for Fourth Amendment purposes. The seizure of Mr. Steed continued through the show of authority, show of force and the application of force by law enforcement and the foreseeable actions of third parties in response to law enforcement.

92.     In their pursuit of a person, whom was alleged to have committed a traffic infraction, the Defendants acted unreasonably and with excessive force under the circumstances as to Mr. Lavoy Steed. Such actions resulted in the death of Mr. Lavoy Steed.

93.     The Fourth Amendment provides: "The right of people to be secured in their persons…against unreasonable…seizures, shall not be violated…"

94.     Lavoy Steed was seized and not able to protect himself, because of law enforcement actions, inactions and omissions.

95.     Defendants' actions violated the Fourth Amendment to the U.S. Constitution, which prohibits seizure without probable cause. Acting individually and in

concert, Defendant's- through their own actions and or omissions, engaged in an additional and unlawful seizure of Plaintiff, and then engaged in an unlawful use of force against Plaintiff when deploying Tire Deflation devices upon the occupied Plaintiff vehicle on multiple occasions at speeds that were much too dangerous for a safer deployment. Law enforcement increased the danger with each attempt of deployment and the dangerous speeds and manner in which they did pursue the alleged suspect vehicle. The Deployment under these circumstances was malicious and clearly at odds with department policy, statutory mandate was consistent with the customs and policies and practices of Defendants and their respective department. That said, the use of the Tire Deflation Devices and the violative reckless manner of the pursuit, constituted the use of unreasonable and excessive force against the suspect vehicle as well as against the innocent bystanders and passengers within said suspect vehicle.

96.    Additionally, each Defendant in this Count failed to prevent the constitutional violations committed by the other and as such failed in the duty to intervene and protect and innocent bystander from the excessive and unreasonable force of law enforcement.

97.    The acts and / or omissions of each Defendants were the legal and proximate cause of Plaintiff's catastrophic injuries, pains and death.

98.    As a direct and proximate result of the unreasonable seizure of Plaintiff, she suffered severe emotional pains and continues to suffer severe mental anguish and emotional distress.

99.    The acts of the Defendants each of them as described, were intentional, with the intent to harm, wanton, malicious, oppressive, reckless and deliberately

indifferent to the rights of Plaintiff, the life of Plaintiff, thus entitling the Plaintiff to an award of punitive damages against the individually named Defendants and their respective agencies.

100. The conduct of the Defendant's put Lavoy Steed at risk of serious, immediate and proximate harm, including death. Foreseeable under the circumstances in their totality.

101. As a direct and proximate result of the Defendants' illegal and unjustified conduct, the Plaintiffs were injured and are entitled to recover damages for:

a. The deprivation of the deceased's constitutional rights;

b. The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

c. The present worth or value of the estate which Lavoy Steed would reasonably be expected to have saved and accumulated as a result of his efforts between the time of his premature death and the end of his natural life, had he lived.

d. The death and funeral expenses as well as interest on the cost of funeral and burial of Lavoy Steed for the period between the date of his premature death and the date on which he could have been expected to die;

e. The physical and mental pain and suffering of Lavoy Steed;

f. The present value of loss of services and support;

g. All consequential damages;

h. All actual and compensatory damages including, but not limited to, past and present pain and suffering and medical expenses; and

i. Any other damages allowed by federal or state law.

102.    If Plaintiff prevails, she is entitled to an award of attorney's fees, pursuant to 42 U.S.C. Sec. 1988.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies, for compensatory damages, attorney's fees,  pre and post judgment interest, costs and punitive damages against  Defendant Police Officers and their respective employing agencies, along with for such other and further relief as the Court deems just and proper.

## COUNT II

### VIOLATIONS OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION ACTIONABLE PURSUANT TO 42 U.S.C. SEC. 1983 (EXCESSIVE  FORCE) AGAINST ALL DEFENDANTS

Plaintiff Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

103.    Defendants are persons for the purposes of a Section 1983 action for damages.

104.    At all times material hereto, the Defendants actions/and or inactions were taken under color of authority of law as law enforcement officers for the respective law enforcement agencies.

105.    Upon the Ford Explorer's initial full and complete stop in response to the traffic stop, decedent, Lavoy Steed, was seized for Fourth Amendment purposes. The seizure of Mr. Steed continued through the show of authority, show of force and the application of force by law enforcement and the foreseeable actions of third parties in response to law enforcement.

106.     Plaintiff Steed was seized at the instant Defendants activated their emergency equipment in an effort to subject the suspect vehicle to its authority as a law enforcement officer. In addition, each separate moment the law enforcement authorities deployed and attempted force against said suspect vehicle, in that, each time there was an attempt to deploy 'spike strips' at excessive speeds, each reckless pursuit action, each act constituted a separate act of excessive force.

107.     In their pursuit of a person, whom was alleged to have committed a traffic infraction, the Defendants acted unreasonably and with excessive force under the circumstances as to Mr. Lavoy Steed. Such actions resulted in the death of Mr. Lavoy Steed.

108.     At each of these moments, of deployment efforts, each overly aggressive and reckless driving behavior and pursuit misconduct, Plaintiff's Fourth Amendment rights to be free and secure from unreasonable and excessive force, as applied to the states by the Fourteenth Amendment, were fully implicated.

109.     At these moments Plaintiff  Lavoy Steed:

(a)     Had not committed a serious crime to warrant to use of force;

(b)     Presented no threat to the safety of the Officer or Others;

(c)     Was not actively resisting arrest;

(d)     Was not attempting to evade arrest by flight.

(e)     Had complied with police authority and was not free nor able to provide for his own safety, as such, law enforcement had a duty to protect and failed to do so, by the use of unreasonable excessive force.

110.    Lavoy Steed was seized and not able to protect himself, because of law enforcement actions, inactions and omissions.

111.    Acting individually and in concert, Defendant's- through their own actions and or omissions, engaged in an additional and unlawful seizure of Plaintiff, and then engaged in an unlawful use of force against Plaintiff when deploying Tire Deflation devices upon the occupied Plaintiff vehicle on multiple occasions at speeds that were much too dangerous for a safer deployment. Law enforcement increased the danger with each attempt of deployment and the dangerous speeds and manner in which they did pursue the alleged suspect vehicle.  The Deployment under these circumstances was malicious and clearly at odds with department policy, was consistent with the customs and policies and practices of Defendants and their respective department.  That said, the use of the Tire Deflation Devices constituted the use of unreasonable and excessive force against the suspect vehicle as well as against the innocent bystanders and passengers within said suspect vehicle.

112.    Additionally, each Defendant in this Count failed to prevent the constitutional violations committed by the other and as such failed to intervene and protect and innocent bystander from the excessive and unreasonable force of law enforcement.

113.     The acts and / or omissions of each Defendants were the legal and proximate cause of Plaintiff's catastrophic injuries, pains and death.

114.     As a direct and proximate result of the unreasonable seizure of Plaintiff, she suffered severe emotional pains and continues to suffer severe mental anguish and emotional distress.

115.     The acts of the Defendants each of them as described, were intentional, with the intent to harm, wanton, malicious, oppressive, reckless and deliberately indifferent to the rights of Plaintiff, the life of Plaintiff, thus entitling the Plaintiff to an award of punitive damages against the individually named Defendants and their respective agencies.

116.     The conduct of the Defendant's put Lavoy Steed at risk of serious, immediate and proximate harm, including death. Foreseeable under the circumstances in their totality.

117.     As a direct and proximate result of the Defendants' illegal and unjustified conduct, the Plaintiffs were injured and are entitled to recover damages for:

a.     The deprivation of the deceased's constitutional rights;

b.     The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

c.     The present worth or value of the estate which Lavoy Steed would reasonably be expected to have saved and accumulated as a result of his efforts between the time of his premature death and the end of his natural life, had he lived.

d. The death and funeral expenses as well as interest on the cost of funeral and burial of Lavoy Steed for the period between the date of his premature death and the date on which he could have been expected to die;

e. The physical and mental pain and suffering of Lavoy Steed;

f. The present value of loss of services and support;

g. All consequential damages;

h. All actual and compensatory damages including, but not limited to, past and present pain and suffering and medical expenses; and

i. Any other damages allowed by federal or state law.

j. If Plaintiff prevails, she is entitled to an award of attorney's fees, pursuant to 42 U.S.C. Sec. 1988.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies, for compensatory damages, attorney's fees, pre and post judgment interest, costs and punitive damages against Defendant Police Officers and their respective employing agencies, along with for such other and further relief as the Court deems just and proper.

## COUNT III

### NEGLIGENT HIRING, TRAINING AND SUPERVISION
### BROUGHT PURSUANT TO 42 U.S.C. 1983
### (AGAINST ALL DEFENDANTS INDIVIDUALLY AND OFFICIALLY)

Plaintiff re-plead all preceding paragraphs as though fully set forth herein.

118. Defendants are the employers and /or supervising authority of officers for the MSHP and The City of Pevely, Police Department.

119.    As employers/supervisors within the Missouri State Highway Patrol and employment with the City of Pevely, Police Department, these defendants have a duty to exercise reasonable care in the hiring, retention, training and supervision of individuals who, because of their employment, may pose a threat of injury to members of the public.

120.    These Defendants knew or should have known of the officers dangerous proclivities, insufficient training and supervision and the threat of injury they posed in effectuating their duties, regarding pursuits and the use of force against a moving vehicle, which has innocent persons as passengers, said persons not in the commission of any crime nor resisting the authority of law enforcement, due to their lack of training, subpar pursuit skills and an inability to properly and with prudent caution operate their law enforcement vehicles.

121.    These Defendants breached their duty in the negligent and reckless and deliberately indifferent supervision and retention of the enforcement officers directly and indirectly involved in the pursuit.

122.    As a direct and proximate result of the Defendants illegal and unjustified conduct, the Plaintiffs sustained injuries and are entitled to recover damages for:

a.    The deprivation of the deceased's constitutional rights;

b.    The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

c.    The present worth or value of the estate which Lavoy Steed would reasonably be expected to have saved and accumulated as a result of his efforts between the time of his premature death and the end of his natural life, had he lived;

d.     The death and funeral expenses as well as interest on the cost of funeral and burial of LaVoy Steed for the period between the date of his premature death and the date on which he could have been expected to die;

e.     The physical and mental pain and suffering of Lavoy Steed;

f.     The present value of loss of services and support;

g.     All consequential damages; and

h.     All actual and compensatory damages including, but not limited to past and present pain and suffering and medical expenses.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies, for compensatory damages, attorney's fees, pre and post judgment interest, costs and punitive damages against Defendant Police Officers and their respective employing agencies, along with for such other and further relief as the Court deems just and proper.

## COUNT IV

## VIOLATION OF THE 14TH AMENDMENT
## RIGHT TO EQUAL PROTECTION OF THE LAW

Plaintiff re-plead all preceding paragraphs as though fully set forth herein.

123.     Defendants, acting under color of law and in concert with one another, have caused plaintiffs to be penalized and deterred in the exercise of their fundamental right to interstate travel on account of his race and or ethnicity. These actions violated plaintiff's right to travel, and right to be free of excessive force, free from unreasonable seizure in violation of the Equal Protection Act of the 14th Amendment.

124.     Defendants acting under color of law, institute, authorize, ratify, permit and acquiesce in policies, practices and customs of overly aggressive, pursuit, detention, searches and seizures and excessive force which violate plaintiffs' fundamental right to interstate travel and to be free of the herein conducts of law enforcement; regarding classifications of motorists in the State Of Missouri.

125.     These classifications have a direct bearing on the fundamental interest of freedom from unlawful seizure, excessive force, excessive / reckless policing tactics. The Defendants have no compelling interest justifying the creation of these classes and cannot show that these classifications are necessary to serve any legitimate governmental interest.

126.     The mode and conduct of pursuit of Defendants singles out persons based upon race and or ethnicity and as identified in the Missouri State Law Enforcement Disparity reports, black motorist is singled out and more aggressively engaged by law enforcement and as such there is no governmental interest to show or justify the necessity of the disparity in classifications.


127.     As a direct and proximate result of the Defendants illegal and unjustified conduct, the Plaintiffs sustained injuries and are entitled to recover damages for:

a.     The deprivation of the deceased's constitutional rights;

b.     The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

c.      The present worth or value of the estate which Lavoy Steed would reasonably be expected to have saved and accumulated as a result of his efforts between the time of his premature death and the end of his natural life, had he lived;

d.      The death and funeral expenses as well as interest on the cost of funeral and burial of LaVoy Steed for the period between the date of his premature death and the date on which he could have been expected to die;

e.      The physical and mental pain and suffering of Lavoy Steed;

f.      The present value of loss of services and support;

g.      All consequential damages; and

h.      All actual and compensatory damages including, but not limited to past and present pain and suffering and medical expenses.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies, for compensatory damages, attorney's fees,  pre and post judgment interest, costs and punitive damages against  Defendant Police Officers and their respective employing agencies, along with for such other and further relief as the Court deems just and proper.

## COUNT V

## MONELL MUNICIPAL LIABILITY/VIOLATION OF CONSTITUTIONAL

## RIGHTS- ACTIONABLE PURSUANT TO 42 U.S.C. SEC. 1983

## (AGAINST ALL DEFENDANTS )

Plaintiff Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

128.    The Listed Law Enforcement Agencies, as a municipal entity, through its law enforcement officers caused the constitutional violations described above.

129.    The constitutional violations described above were done pursuant to "policy and practices" of the Defendants in this count.

130.    At the time of these constitutional violations, Defendant had ratified customs and practices, which permitted and encouraged their police officers to unjustifiably, unreasonably and unlawfully seize persons without probable cause, use unreasonable and excessive force, in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution and to more aggressively pursue and engage classifications of motorists based on ethnicity and or race.

131.    The customs, policies, practices and usages established by Defendants were the moving force behind the violations of Plaintiff's constitutional rights.

132.    The Listed Law enforcement Agencies allow and encourage their police officers to use unreasonable and excessive force against innocent bystanders and Officers do not engage in the reasonable protection of human life of innocent bystanders and the officers more aggressively engage certain classifications of motorists based on race and or ethnicity.

133.    The conduct of Officers violated agency policy and rules and safety protocol and statutory mandates regarding the operation of emergency vehicles.

134.    Upon information and belief, the acts of the Officers were part of a pattern of transgression, of which Defendant, The Law Enforcement Agencies knew or should

have known. The failure of Defendants in this count to act proactively to prevent such a pattern of transgressions, and particularly to prevent the constitutional violations outlined herein, establishes the policy of the Defendant The Law Enforcement Agencies to condone or otherwise tolerate such constitutional violations.

135.     Said customs and practices also called for the Law Enforcement Agencies not to discipline, prosecute, or objectively and or independently investigate or in any way deal with or respond to the known incident.

136.     The policies, practices and customs described in this count were adopted and use of excessive force in effect unreasonably and or without due cause for doing so against Plaintiff with deliberate indifference to Plaintiff's constitutional rights and an intent to harm a fleeing suspect and causing damage/injury or death to innocent bystanders and the rights of those similarly situated.

137.     Defendants the Law Enforcement Agencies herein are accountable under 42 U.S.C. Sec. 1983 because they, through their law enforcement officers, was deliberately indifferent to an obvious need to train Defendant Officers , respectively, to avoid constitutional violations arising from inadequate training pertaining to the lawful use of force against unarmed pretrial detainee's, the law pertaining to seizures and the use of excessive force, with an intent to harm.

138.     Those deficiencies caused Plaintiff damages.

139.     In light of the fact that it was Defendant Law Enforcement Officers of this cause, who engaged in the constitutional violations, the need to correct deficiencies are so obvious, and the inadequately so likely to result in the violation of constitutional rights,

which policymakers of the municipality can reasonably be said to have deliberately indifferent to the need.

140.    Defendant listed in this count disregarded the obvious need for training on these matters and continued to retain and adhere to the constitutionally deficient training programs despite an obvious need for training was carried out with deliberate indifference to the rights of Plaintiff and those similarly situated.

141.    The acts and or omissions of Defendant named in this count were the legal and proximate cause of Plaintiff's injuries as described herein.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies, for compensatory damages, attorney's fees,  pre and post judgment interest, costs and punitive damages against  Defendant Police Officers and their respective employing agencies, along with for such other and further relief as the Court deems just and proper.

## COUNT  VI

### WRONGFUL DEATH OF LAVOY SAVALAS STEED PURSUANT TO SECTION 1983 (AS FOR ALL DEFENDANTS)

Plaintiff  Steed re-alleges and incorporates by reference, as though fully contained herein, all preceding allegations set forth above.

142.    Plaintiff and decedent, Lavoy Savalas Steed, at all times mentioned herein were citizens of the United States and residents of the State of Missouri.

143.    Plaintiff(s) Bring this cause of action pursuant to the United States Code, Title 42, Section 1983 et seq. to redress deprivation by the Defendants under color of

state law of the rights, privileges, and immunities secured by the statutes and the constitution of the United States of America.

144.    Defendants, acting under color of state law, recklessly, with malice, in a gross intentional manner and with an intent to harm, and with deliberate indifference to Plaintiff and decedent's rights, privileges and immunities, failed to protect the decedent Lavoy Savalas Steed from harm and failed to provide the decedent with reasonable regard to his safety and life, as an innocent bystander.

145.    Defendants failed to follow their own internal policies and practices as well as statutory requirements and regulations designed to protect the decedent and failed to provide him with the level of protection required by law.

146.    Defendants, through its servants carelessly, recklessly and with an intent to harm, failed to provide decedent the protection required by law enforcement harm and unskillfully, and intentionally pursued a suspect vehicle at enormously high rates of speed, at distances of many miles, engaging in various dangerous techniques for the rate of speed, subjecting the vehicle to lethal force, therein all of its occupants to said reckless and malicious forces. In doing so failing to provide plaintiff, an innocent bystander, a reasonable level of protection required by law.

147.    The death of Lavoy Savalas Steed was directly caused by the carelessness, unskillfulness and recklessness, malice and harmful intentions of law enforcement creating and exacerbating a dangerous condition, making said condition even more dangerous and unsafe for an extended period of time. Defendants knew and or should have known by the exercise of reasonable care and deployment of authority that it was unsafe to innocent bystanders to engage in the conduct so engaged and that, law

enforcement training alerts and requires police officers to constantly monitor a situation to determine if the dangerous pursuit and apprehension of a suspect outweighs the danger to a human life of an innocent bystander.

148.    The Employing Defendants failed to meet their obligations to train and monitor conditions and policies regarding the decision to pursue and or to continue to pursue a suspect for minor traffic offenses.

149.    That at all times mentioned herein Defendants acted negligently, recklessly, with gross negligence and deliberate indifference and with an intent to harm a suspect and collaterally the innocent bystanders in one or more of the following particular ways:

(a)    Failing to provide adequate training to its law enforcement officers regarding the pursuit of suspect vehicles and or the continued pursuit of suspect vehicles for minor traffic violations;

(b)    Failing to supervise its officers during situations of danger and or increasing danger that pose a risk to serious physical injury and or death for minor offenses and or offenses that do not warrant the use of deadly and or excessive forces;

(c)    Carelessly and recklessly failing to provide adequately for the safety and well-being and life of an innocent bystander;

(d)    Carelessly and recklessly ignoring the communications of another witness to a serious matter, and heeding the pleas of a family member reporting said dangerous and unsafe condition and facts;

(e)    Failing to adequately train, supervise and monitor employees and other staff members;

(f)     Failing to adopt a comprehensive fatality prevention process for pursuits that involve innocent bystanders and exposes said bystanders to the high probability of death and or serious physical injury.

(g)     Operating emergency vehicles in violation of statutory mandates for pursuits.

(h)     Operating emergency vehicles in violation of statutory mandates which limit the speed said driver accomplishes, as to not endanger life. RSMo 304.022(5)(2)(c)

(i)     Failing to properly and accurately report a police matter. As in this case, the Police Reports of the matter, in material ways, is inconsistent with the audio and video captured involving this matter thus far.

150.     As a direct result of the actions and inactions of Defendants, the decedent, Lavoy Savalas Steed sustained catastrophic injuries as a result of the violent motor vehicle crash which ultimately decedent succumb to the severity of his injuries and did die on May 11, 2014.

151.     The decedent, Lavoy Savalas Steed, was caused to suffer physical and mental pain, from his injuries until his death, and was deprived of life and liberty as a result of Defendants' actions and or inactions.

152.     Plaintiffs are entitled to recover damages in excess of the minimum jurisdictional limits of this court.

153.     At all times mentioned herein, the circumstances given rise to the death of Lavoy Savalas Steed, were attended by aggravating circumstances in that the acts of Defendants were grossly negligent, reckless, careless, imprudent, excessive and with an intent to harm and totally without though as to the safety and welfare of innocent

bystanders and with complete indifference to or conscious disregard to the safety of others.

WHEREFORE, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies, for compensatory damages, attorney's fees, pre and post judgment interest, costs and punitive damages against Defendant Police Officers and their respective employing agencies, along with for such other and further relief as the Court deems just and proper.


## COUNT VII

### NEGLIGENCE
### BROUGHT PURSUANT TO MISSOURI REVISED STATUTE 537.080
### (AGAINST ALL DEFENDANTS INDIVIDUALLY AND OFFICIALLY)

Plaintiff re-plead all preceding paragraphs as though fully set forth herein.

154.    Sovereign immunity is waived pursuant to Mo. Rev. Stat. Sect. 537.600(1), which allows for claims against the public entity from liability and suit for compensatory damages for negligent acts or omissions for injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment.

155.    The Law Enforcement Officers, engaged in a violent pursuit of a suspect vehicle, that was occupied by innocent bystanders, and or the passengers had not committed any criminal offense, nor were the passengers actively resisting any law enforcement authority, the passengers were in the custody and constructive custody of the law enforcement officers, the passengers, as a result of police action, was not free to nor

could they act on their own to protect their safety and as such said officers, had a duty of care to plaintiff.

156.     The Law Enforcement personnel involved in this matter, was or reasonably should have been aware of the risks posed to an individual who has been forced to stay in a vehicle operated by a suspect, whom refuses to allow the passengers to safely exit the vehicle as the suspect engaged in aggressive evasion that became more dangerous in response to law enforcements more aggressive pursuit of the suspect vehicle.

157.     The Law enforcement personnel in this pursuit breached their duty to LaVoy Steed in one or more of the following ways;

a.      By operating the law enforcement vehicles at an excessive speed given the totality of the circumstances and the duty of safety for innocent by standers, to include innocent passengers in a suspect vehicle whom were not committing any criminal offense nor had resisted in anyway law enforcement authority, whom also, as a result of police conduct, was limited in their ability to assist themselves;

b.      Continuing pursuit of a suspect vehicle, suspected of committing a traffic offense with unreasonable and excessive force, for the totality of the circumstances;

158.     As a direct and proximate result of the Defendants illegal and unjustified conduct, the Plaintiffs sustained injuries and are entitled to recover damages for:

i.      The deprivation of the deceased's constitutional rights;

j.      The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

k.     The present worth or value of the estate which Lavoy Steed would reasonably be expected to have saved and accumulated as a result of his efforts between the time of his premature death and the end of his natural life, had he lived;

l.     The death and funeral expenses as well as interest on the cost of funeral and burial of LaVoy Steed for the period between the date of his premature death and the date on which he could have been expected to die;

m.     The physical and mental pain and suffering of Lavoy Steed;

n.     The present value of loss of services and support;

o.     All consequential damages; and

p.     All actual and compensatory damages including, but not limited to past and present pain and suffering and medical expenses.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies, for compensatory damages, attorney's fees,  pre and post judgment interest, costs and punitive damages against  Defendant Police Officers and their respective employing agencies, along with for such other and further relief as the Court deems just and proper.

## COUNT VIII

## NEGLIGENCE PER SE

**BROUGHT PURSUANT TO MISSOURI REVISED STATUTE
SECTION 537.080
(AGAINST ALL DEFENDANTS IN THEIR INDIVIDUAL AND
OFFICIAL CAPACITIES)**

Plaintiff re-plead all preceding paragraphs as though fully set forth herein.

159. Sovereign immunity is waived pursuant to Missouri revised Statute, sect. 537.600(1), which allows for claims against the public entity from liability and suit for compensatory damages for negligent acts or omissions for injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment.

160. Violations of the statutory code constitute negligence as a matter of law.

161. Under Missouri law: "Every person shall operate a vehicle in a careful and prudent manner and at a rate of speed so as to not endanger the property of another or the life or limb of any person and shall exercise the highest degree of care." RSMo 306.125(1).

162. The manner in which the defendants operated their patrol vehicles was in violation of RSMo 306.125(1).

163. Defendants were acting within the scope of employment as law enforcement officers employed by their respective law enforcement agencies, The Missouri State Highway Patrol, State Troopers as well as, the City of Pevely, Police Department, a municipality in the state of Missouri.

164. The negligence per se of the Defendants was a proximate and direct cause of the injuries sustained by Plaintiffs'

165. As a direct and proximate result of the Defendants illegal and unjustified conduct, the Plaintiffs sustained injuries and are entitled to recover damages for:

q. The deprivation of the deceased's constitutional rights;

r. The humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress suffered by the deceased;

s. The present worth or value of the estate which Lavoy Steed would reasonably be expected to have saved and accumulated as a result of his efforts between the time of his premature death and the end of his natural life, had he lived;

t. The death and funeral expenses as well as interest on the cost of funeral and burial of LaVoy Steed for the period between the date of his premature death and the date on which he could have been expected to die;

u. The physical and mental pain and suffering of Lavoy Steed;

v. The present value of loss of services and support;

w. All consequential damages; and

x. All actual and compensatory damages including, but not limited to past and present pain and suffering and medical expenses.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants, the respective Law Enforcement Agencies, for compensatory damages, attorney's fees, pre and post judgment interest, costs and punitive damages against Defendant Police Officers and their respective employing agencies, along with for such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Christopher B. Bent, # 45875
Law Office of Christopher Bent, LLC
2200 West Port Plaza Drive
Suite # 306
St. Louis, MO 63146
Phone: (314) 439-0287
Fax:   (314) 558-2622

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of October 2018, the foregoing was electronically submitted  and deposited postage prepaid, U.S.P.S addressed to:


Office Of The Missouri Attorney General
Robert J. Isaacson
Assistant Attorney General
P.O. Box # 861
St. Louis, MO 63188

ATTY for MSHP Defendants

And

PAUL CAMAZINE & BLUMENTHAL, P.C.
D. Keith Henson, Esq.
165 N. Meramec, Ave., Suite # 110
Clayton, MO 63105
ATTY for City Of Pevely Defendants


_/s/_ Christopher Bent,