UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAVOY STEED, by and through next friend TOYA STEED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 4:17CV1440 HEA |
| MISSOURI STATE HIGHWAY PATROL, et al., | ) ) ) | |
| Defendants. | ) ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Missouri State Highway Patrol, J.A. Ashby, and Brent Fowler's (collectively, "Defendants") Motion for Summary Judgment [Doc. No. 112]. Plaintiff Lavoy Steed, decedent, by and through his next friend Toya Steed ("Plaintiff" or "Steed"), opposes the Motion. Defendants replied to the opposition, and Plaintiff, with leave of Court, filed a sur-reply. Defendants, with leave of Court, filed a reply to Plaintiff's sur-reply. The matter is now fully briefed.

For the reasons set forth below, Defendants' Motion for Summary Judgment is granted as to each of Plaintiff's pending federal claims. As further discussed below, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are dismissed without prejudice.

1

## Procedural Background

Due to apparent confusion as to which claims are still pending in this case, the Court now briefly restates its rulings on Defendants' earlier motions to dismiss. Plaintiff's Second Amended Complaint ("SAC") alleges 8 counts, each against "all defendants." Counts I-IV and VI each allege a violation of constitutional rights actionable under § 1983, Count V alleges a violation of municipal liability pursuant to *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), and Counts VII and VIII allege negligence and negligence *per se* under Missouri state law, respectively. On November 21, 2018, each of the Defendants who is a party to the instant motion filed a partial motion to dismiss. Defendant Missouri State Highway Patrol ("MSHP") moved to dismiss it as to Counts I-VI, while the individual defendants J.A. Ashby ("Ashby") and Brent Fowler ("Fowler") each moved to be dismissed in their official capacity from Counts I-VI of the SAC, and also to be dismissed in their personal capacity from Count V of the SAC.

In its Opinion, Memorandum, and Order dated January 8, 2019, the Court granted each of the partial motions to dismiss. Accordingly, the following claims remain as to each of the Defendants:

- As to MSHP, only Counts VII and VIII (collectively, the "State Law Claims") remain. No federal claims against MSHP remain.

- As to Fowler and Ashby, Counts I, II, III, IV, and VI (collectively, the "Section 1983 Claims") remain against each of them in their personal capacity. Counts VII and VIII – the State Law Claims – also remain.

- Count V was fully dismissed as to MSHP, Fowler, and Ashby.

## Facts and Background

The parties each filed a statement of facts as well as a response to the opposing party's statement of facts as required by Fed. R. Civ. P. 56 and the Court's Local Rule 7-401(E). Significant denials were lodged by each party. The facts, with relevant purported disputes noted, are as follows:

On Sunday, May 11, 2014, defendants Fowler and Ashby worked for defendant MSHP. Fowler held the rank of Corporal and Ashby that of Trooper. Jerome Goode ("Goode") was driving a Blue Ford Explorer ("the Explorer") northbound on I-55 with three passengers, decedent Plaintiff Steed, Presiada Hayes ("Hayes"), and Leon Haywood. Hayes is the only surviving occupant of the Explorer.

*Fowler's involvement*

At his deposition, Fowler testified that he observed the Explorer on northbound I-55 speeding, following another vehicle too closely, and driving onto the left shoulder. Plaintiff disputes this, citing Hayes' sworn statement that she believed the Explorer was traveling at or near the speed limit because they "were

3

travelling the same speed as every other car on the road."

Following his observations, Fowler activated his emergency lights to perform a traffic stop of the Explorer. Goode pulled the Explorer over to the side of the road in front of Fowler's patrol car. As Fowler got out of his car and approached the Explorer, Goode accelerated back into traffic, fleeing from the traffic stop. Fowler got close enough to the Explorer to see the occupants thereof. Fowler yelled "You don't want to do this" as Goode drove away.

The Explorer fled from Fowler in a pursuit that lasted approximately twenty-four miles on I-55. The Explorer reached speeds of 100 miles per hour and higher during the pursuit. Hayes averred that Goode increased his speed when law enforcement came closer to the Explorer and slowed when law enforcement backed off. However, Hayes' statement is rebutted by an undisputed video from Fowler's dashcam that shows the Explorer maintaining or reducing speed even with Fowler immediately behind the Explorer.

Plaintiff claims that the pursuit was terminated by an MSHP supervisor, Lieutenant Enderle, well before the fatal crash occurred. Plaintiff repeatedly asserts that the purported termination of the pursuit is the "key fact" in this litigation. Plaintiff accuses Defendants of "seek[ing] to rewrite the law and disregard the fact that the pursuit was terminated by their supervisor." However, it is clear from the record and even from Plaintiff's own memoranda that neither Fowler nor Ashby

4

received an order to terminate the pursuit from Lt. Enderle.

As Plaintiff wrote in her response to Defendant's motion for summary judgment, Lt. Enderle "did not maintain radio traffic with pursuing officers. His voice is not heard on the dispatch communications. It's unclear whether he even monitored the radio traffic from a remote location." Next, and fully contradicting the previous statements, Plaintiff wrote: "Fowler heard Enderle issue the order terminating the pursuit."

To support her contention that Fowler heard an order terminating the pursuit, Plaintiff cites Fowler's deposition. In the deposition, Fowler discusses an audio recording of Lt. Enderle speaking with a radio operator during the pursuit. Fowler testifies that he reviewed the audio the day before his deposition, and that during that review he heard Lt. Enderle tell the radio operator "we're done." Fowler also testifies that he had no communication with Lt. Enderle during the pursuit and that the radio operator never relayed to him Lt. Enderle's "we're done" statement. There is absolutely no evidence that either Fowler, Ashby, or anyone other than the radio operator knew that Enderle said "we're done." Yet Plaintiff again misconstrued the evidence in her sur-reply stating, "In his testimony Fowler acknowledges Command Staff instructed to him to terminate the pursuit." Again, at the point in Fowler's deposition to which Plaintiff cited, Fowler was recalling an audio recording he heard the day before, not something he heard during the pursuit.

Plaintiff also willfully ignores that after Lt. Enderle said "we're done, we're terminating," the radio operator informed him that Pevely police officers were joining the pursuit and that spike strips were being deployed, to which Lt. Enderle replied "Well, let's let it continue." This is further evidence that the pursuit was not terminated and that Plaintiff's repeated assertion of this "key fact" is mistaken at best and deceptive at worst. In any case, the unrefuted  record evidence directly controverts the assertion that the pursuit was terminated; that assertion cannot be considered on this motion for summary judgment.

The Explorer crashed when Goode exited the interstate at the Imperial Main Street exit at a high rate of speed. Fowler's vehicle never came into contact with the Explorer. Hayes averred that Fowler and another officer boxed the Explorer in and herded it towards the exit, forcing the Explorer to exit the interstate, lose control and crashed. The dashcam video from Fowler's car shows no such "herding" or forcing the Explorer off the interstate. Rather, the Explorer initiates its movements from the second-from-left lane to the far-right exit lane. Fowler moves right as the Explorer does, but stops moving right at the second-from-right lane, leaving the rightmost lane open between his vehicle and the exit lane.

*Ashby's involvement*

Ashby's sole involvement with the pursuit was deploying spike strips about five miles south of the northbound Imperial Main Exit. Spike strips are used to

deflate tires. The "spikes" used in spike strips are encased in plastic. Once the spike strip is impacted, spikes lodge into a tire and cause it to slowly deflate.

Defendants assert that the Explorer did not hit the spike strips Ashby deployed. Ashby testified that he "attempted to spike strip the blue Ford Explorer" and that "the vehicle missed my spike strips." Fowler testified that as he was pursuing the Explorer, he saw the Explorer go around the spike strips. Ashby testified that he deployed the spike strips across lanes 1 and 2 (the leftmost and middle lane.) In the dashcam video, the Explorer moves to lane 3 (the rightmost lane) well before it gets to the point where Ashby had deployed spike strips. In his deposition, Ashby even testified that the same set of spike strips deployed in this incident were kept in his patrol car equipment until 2017 or 2018 when a fleeing vehicle did run over them, destroying the spike strips and requiring replacement.

Plaintiff's argues that a genuine dispute of fact exists as to whether the Explorer drove over the spike strips. In his attempt to create a question of fact, Plaintiff's counsel misrepresents the deposition testimonies of Fowler, Ashby, and MSHP expert witness Lt. Day. For example, in response to Defendants' fact statement that the Explorer drove around the spike strips, Plaintiff states that "Ashby could not determine whether that spikes entered the tires of [the Explorer] despite his close proximity." Nowhere in deposition pages Plaintiff cited (nor anywhere else in his deposition) does Ashby testify to anything of the sort. As

noted above, Ashby unequivocally testified that the Explorer missed his spike strips. The only affirmative evidence about spike strips offered by Plaintiff are included in Hayes' affidavit. Even then, Hayes averred only that the MSHP attempted to stop the Explorer by deploying spike strips; she says nothing to indicate that the Explorer actually ran over the spike strips or that it seemed like the Explorer's tires were deflating. And although Hayes averred that "it doesn't take a seasoned professional [crash scene expert] to know that deploying spike strips will likely cause a car, traveling at a high rate of speed to crash either by avoiding the spikes or by running over it," the dashcam video shows that the Explorer did not lose control when moving into lane 3 to avoid the spike strips. Even viewing the evidence in the light most favorable to Plaintiff, the Court finds no *genuine* dispute as to the Explorer avoiding Ashby's spike strips.

Plaintiff also asserts that Ashby deployed the spike strips after the command was given to terminate the pursuit. As discussed above, Lt. Enderle did not terminate the pursuit and even if he did, it was not communicated to Fowler and Ashby.

*Motivation for the pursuit*

Fowler and Ashby both averred that their only goal in the pursuit was to pull over the pursued car (the Explorer) without harming anyone. Ashby and Fowler both averred they did not know anyone in the pursued vehicle before the day of the

8

pursuit. They also both averred that races of the driver and occupants of the Explorer did not affect their decision making or actions.

Plaintiff argues that race did factor into Fowler and Ashby's decisions. In support, he references Hayes' sworn statements that it is her belief that: race was a factor in Defendants' decision to initiate and maintain a high-speed pursuit on a crowded interstate highway; Defendants would not have deployed spike strips if the occupants of the Explorer were Caucasian, and; Defendants exercise discretion with Caucasians but completely lack empathy, concern or a desire to preserve life when it comes to African Americans and other minorities.

## Summary Judgment Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *Id*.  "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery,*

9

*Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted).  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted).  Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'"  *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)).  The nonmoving party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor.  *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."  *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). "Simply referencing the complaint, or

alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197 at *3 (8th Cir. 2008).

## Discussion

Plaintiff did not address any of the Section 1983 Claims in her initial response to Defendants' Motion for Summary Judgment. When Defendants argued in their reply memorandum that Plaintiff had therefore abandoned those federal claims, Plaintiff sought, and was granted, leave to file a sur-reply.

Rather than admit the oversight and use the leave of court that had been granted him to argue against summary judgment on the Section 1983 Claims, Plaintiff's attorney began the sur-reply by accusing Defendants' attorneys of various unfounded improprieties[1] and arguing that Plaintiff's Complaint was sufficient to survive a motion to dismiss.[2] Plaintiff's attorney also conflated the Court's previous ruling on Defendant's Motion to Dismiss with a "ruling on the legal issues regarding federal and state claims," after which only factual issues remained. Not only is this an incorrect statement of the implication of a motion to

---

[1] Specifically, Plaintiff's attorney accused Defendants of "improperly rais[ing] new arguments and assertions not made in their initial brief" by claiming in their reply that Plaintiff had abandoned the Section 1983 claims, of "implying that this Court is prohibited from considering [Plaintiff's] pleadings in this matter in ruling on the Motion for Summary Judgment," and of "wrongly suggesting this Court has not made any legal determinations in this case." Plaintiff's attorney also incorrectly stated the subject of Defendant's previous Motion to Dismiss by claiming that "Defendants attempted to have this Court dismiss all of Plaintiffs' claims."

[2] The standard employed on a motion to dismiss is wholly distinct from that used on a motion for summary judgment.

dismiss ruling, but in this case, the Court granted dismissal of each claim for which Defendants sought dismissal. No legal determinations were made regarding the claims of which Defendants did not seek dismissal. Those are the claims that remain at this point in the litigation: Counts I-IV and VI (the Section 1983 Claims) as to Ashby and Fowler in their personal capacities only and Counts VII and VIII (the State Law Claims) against Fowler, Ashby, and MSHP.

In any case, the Court cannot grant summary judgment in favor of Defendants on the Section 1983 Claims based solely on Plaintiff's failure to address those claims in her response. *See Mack v. Dillon*, 594 F.3d 620, 622 (8th Cir. 2010); *United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, St. Louis, Mo.,* 27 F.3d 327, 329 n. 1 (8th Cir.1994) (failure to respond to summary judgment motion does not automatically compel resolution in favor of moving party). Moreover, Plaintiff did submit with her response a statement of facts she claims are still in dispute as well as responses to each of Defendants' statements of fact.  Finally, because the Court granted Plaintiff leave to submit a sur-reply regarding the motion for summary judgment and granted Defendants leave to reply to that sur-reply, each party has had full opportunity to make their arguments and the motion for summary judgment is ripe for ruling.

Count I – Fourth Amendment Seizure; Fifth and Fourteenth Amendment Due Process

Count I of Plaintiff's SAC alleges "violations of the 4th, 5th and 14th Amendments to the U.S. Constitution actionable pursuant to 42 U.S.C. Sec. 1983 due process, right to life and bodily integrity/unreasonable seizure."

*Fifth Amendment – Due process*

"The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions." *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n. 2 (8th Cir. 2009) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). It is undisputed that Fowler and Ashby worked for MSHP, a state agency. Plaintiff's claim of a Fifth Amendment due process clause violation fails as a matter of law.

*Fourth Amendment – Initial traffic stop*

Steed and the other passengers in the Explorer were arguably subject to a Fourth Amendment seizure when Fowler initially stopped the vehicle.[3] Plaintiff claims that Fowler had no probable cause to stop the vehicle. Plaintiff bases this claim on Hayes' sworn statements that "I believed the [Explorer] was traveling at or near the speed limit at the time we were stopped because we were traveling at the same speed as every other car on the road" and "The initial police stop was suspect, as I do not believe we were speeding."

---

[3] The Court assumes without deciding that a "seizure" of Steed occurred when Goode briefly stopped the vehicle before fleeing. *See Brendlin v. California*, 551 U.S. 249, 254 (2007) ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission;") (holding that a passenger is "seized" during a traffic stop for Fourth Amendment purposes.)

Although the summary judgment standard dictates that the Court view the facts and any reasonable inferences in the light most favorable to the nonmoving party, the Court cannot ignore incontrovertible evidence which clearly contradicts the nonmoving party's allegations. *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Hayes' statements are directly refuted by Fowler's testimony which is corroborated by the undisputed dashcam video. The video shows Fowler following behind a Honda CR-V in the left lane of a two-lane road. When the road veers to the right, the Explorer can be seen some distance ahead in the left lane, behind two other vehicles in the left lane. The video shows the Explorer gaining on the vehicle in front of it and following closely behind the vehicle, a traffic violation. Both vehicles in front of the Explorer then move to the right lane, and the Explorer passes them. In addition to Fowler's testimony that he observed the Explorer going 92 miles an hour before he decided to stop the vehicle, the dashcam video's undisputed speedometer feature shows Fowler following the Explorer at speeds in excess of the speed limit, indicating that the Explorer was also speeding, a traffic violation. Because the dashcam video clearly contradicts Hayes' recollections, the

14

Court must view the facts in the light depicted by the videos.[4] *Wallingford*, 592 F.3d at 892 (citing *Scott*, 550 U.S. at 381).

"Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. $45,000.00 in U.S. Currency*, 749 F.3d 709, 715 (8th Cir. 2014) (quoting *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir.1994) (en banc) (quotation marks omitted)). Based on his observations of the Explorer following too close and speeding, Fowler had probable cause to stop the Explorer. Plaintiff's claim for unreasonable seizure based on the initial stop fails.

*Fourth Amendment – No post-flight seizure by Ashby or Fowler*

Plaintiff insists that after the initial stop and subsequent flight, "[t]he driver's later attempt to elude troopers and the troopers' response constituted a seizure." To the extent that Plaintiff's statements can be construed to argue that the traffic stop constituted a seizure that continued until Steed's death, they are incorrect. "[I]f someone is 'seized,' and then somehow gets away . . . the first seizure does not continue during the 'period of fugitivity,'" *Gardner v. Buerger*, 82 F.3d 248, 254 n. 9 (8th Cir. 1996) (internal quotation marks omitted). The Explorer's occupants were not subject to a continuous seizure as a result of the initial traffic stop.

---

[4] Fowler also alleges that the Explorer veered onto to the left shoulder (a separate traffic violation) when it was following the vehicle in front of it closely in an attempt to pass. Even if the Court, which is unable to discern from the video whether the Explorer drive into the left shoulder, grants Plaintiff the inference that the Explorer didn't drive on the left shoulder, probable cause for the stop still existed based on the other traffic violations.

Plaintiff's assertion that the post-flight activity of Goode and the troopers constituted a seizure is also incorrect. Plaintiff claims that "an attempt to elude police is a seizure for the purposes of the Fourth Amendment" and quotes *Brower v. County of Inyo,* 489 U.S. 593, 598 in support, writing that " 'A significant show of authority to induce a voluntary stop' is a seizure." Plaintiff has merely appended her desired conclusion to an out-of-context partial quotation; the full quote from *Brower* reads: "In *marked contrast to a police car pursuing with flashing lights*, or to a policeman in the road signaling an oncoming car to halt . . . a roadblock is *not just* a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur." *Id.* at 598 (citation omitted) (emphasis added). Contrary to Plaintiff's misleading citation, *Brower* held that a significant show of authority to induce a voluntary stop without more is *not* a seizure for Fourth Amendment purposes. As an example of a non-seizure, the Supreme Court used "a police car pursuing with flashing lights." Fowler's pursuit of the fleeing Explorer clearly does not constitute a seizure.

Likewise, Ashby did not seize the Explorer or its occupants. The undisputed evidence shows that the Explorer drove around Ashby's spike strips, avoiding them completely. An attempted seizure is not a seizure. *Schulz v. Long*, 44 F.3d 643, 647 (8th Cir. 1995) (citing *California v. Hodari D.,* 499 U.S. 621, 626 n. 2 (1991)).

*Fourteenth Amendment – Due Process*

Finding that no seizure occurred to implicate a Fourth Amendment claim, the Court turns to Plaintiff's Fourteenth Amendment due process claim. In support of their motion for summary judgment, Fowler and Ashby cite the Supreme Court's holding *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). *Lewis* also addressed a police pursuit resulting in the death of a passenger of the pursued vehicle. *Id.* at 837. Regarding Lewis's Fourteenth Amendment due process claim, the Supreme Court held that "in a high-speed automobile chase aimed at apprehending a suspected offender ... only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a [substantive] due process violation." *Id.* at 854. "[H]igh-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.*

Both Fowler and Ashby averred that their sole goals were to pull the pursued car over with no one being harmed, thus meeting their initial burden on summary judgment. Plaintiff did not make out an argument regarding the Fourteenth Amendment due process claim in her opposition or sur-reply. However, Plaintiff seemed to raise an issue of fact in her response to Defendants' statement of Fowler and Ashby's pursuit goals by noting that Fowler yelled "You don't want to do this"

as Goode fled and that Fowler and Ashby purportedly continued the pursuit after they were told by Lt. Enderle to terminate. As the Court has discussed, Plaintiff's argument that the pursuit was terminated by Enderle is not based in fact. As for Fowler yelling "You don't want to do this" at a fleeing Goode, it does not follow that Fowler's statement evinces a conscious-shocking intent to harm Goode or his passengers. Yelling "You don't want to do this" at a suspect who is fleeing from a traffic stop, especially with no other evidence of harmful intent, is not sufficient probative evidence to meet the conscience-shocking conduct requirement of Fourteenth Amendment due process claims.

Ashby and Fowler are entitled to summary judgment as to Count I.

Count II – Fourth Amendment Excessive Force

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Here, Plaintiff alleges that excessive force infringed on his Fourth Amendment right to be free from unreasonable seizure.

Indeed, "[t]he Fourth Amendment covers only 'searches and seizures.'" *Lewis*, 523 U.S. at 843. When neither a search nor a seizure has occurred, the Fourth Amendment is not implicated. *Id.* at 843-44. As discussed in the analysis of Count I, neither Ashby nor Fowler "seized" Steed for Fourth Amendment

purposes. Because neither Ashby nor Fowler infringed Steed's Fourth Amendment rights, there is no basis for an excessive force claim against either of them. Ashby and Fowler are entitled to summary judgment as to Count II.

Count III – Negligent Hiring, Retention, Training, and Supervision

As mentioned at the start of this Opinion, Memorandum and Order, Count III was dismissed as to Defendant MSHP. Count III remains against Ashby and Fowler in their personal capacities. However, in her sur-reply regarding this claim, Plaintiff discusses only the actions and inactions of Lt. Enderle and the MSHP, neither of which is a party to this claim.

Both Ashby and Fowler averred that they did not hire, retain, or supervise any of the other troopers involved in the pursuit. Although Plaintiff points out that Fowler had supervisory duties related to his rank of Corporal, Plaintiff offers nothing to genuinely dispute that Fowler's supervisory duties were not implicated in the pursuit. Ashby and Fowler are entitled to judgment as a matter of law for Count III.

Count IV – Fourteenth Amendment Equal Protection

For the Fourteenth Amendment equal protection claim, Plaintiff alleges selective enforcement of the law in that Defendants more aggressively engaged the Explorer because the driver and passengers were African American. Plaintiff claims that essentially every part of the incident, from the initial stop to the crash,

would not have happened if the occupants of the Explorer were Caucasian. In support of this claim,[5] Plaintiff notes that all of the occupants of the Explorer were African American, while all of the troopers involved in the pursuit were Caucasian. Plaintiff cites Hayes' sworn statements regarding her belief that the Explorer was pulled over, pursued, and spike strips were deployed based on race.

To prove an equal protection claim in the context of a police interaction, Plaintiff must prove that Ashby and Fowler exercised their discretion to enforce a law solely on the basis of race. *Clark v. Clark*, 926 F.3d 972, 980 (8th Cir. 2019). This requires a showing of both discriminatory purpose and discriminatory effect. *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). "Encounters with officers may violate the Equal Protection Clause when initiated solely based on racial considerations." *Id.* (citing *United States v. Frazier*, 408 F.3d 1102, 1108 (8th Cir. 2005)). "When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested to show the requisite discriminatory effect and purpose." *Id.* (citing *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003)). As the non-movant, Plaintiff must "identify affirmative evidence from which a jury

---

[5] In the SAC, Plaintiff alleged that "classification of motorists" exist in Missouri and that the "Missouri State Law Enforcement Disparity reports" found that "black motorist[s are] singled out and more aggressively engaged by law enforcement." Plaintiff did not support these allegations with probative evidence in any of her materials opposing summary judgment. Plaintiff cannot rely on unsupported allegations on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

could find that the plaintiff has carried [her] burden of proving the pertinent motive." *Johnson*, 326 F.3d at 1000 (citing *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).

Plaintiff has not provided affirmative evidence from which a jury could find that Fowler singled out the Explorer for a traffic stop or pursued the Explorer based solely on the occupants' race, nor has she provided any evidence that Ashby deployed spike strips because the Explorer's occupants were African American. Plaintiff has not presented evidence showing that similarly situated individuals who followed another vehicle closely and sped were not pulled over, nor has she presented evidence that similarly situated individuals that fled a traffic stop were not pursued or subject to a deployment of spike strips. Hayes' personal opinion that the troopers' actions on May 11, 2014 were based on racial animus is not probative or affirmative evidence. *See Johnson*, 326 F.3d at 1000. Finally, the fact that the troopers and the Explorer's occupants were of different races is not enough to survive summary judgment. As the Eighth Circuit has stated, "We do not think the combination of an arbitrary stop with a difference in race between the person stopped and the officer establishes a prima facie case of racial discrimination." *Johnson*, 326 F.3d at 1000. Ashby and Fowler are entitled to summary judgment on Count IV.

Count VI – Section 1983 Wrongful Death

For Count VI of the SAC, Plaintiff purports to bring a claim for wrongful death "pursuant to the United States Code, Title 42, Section 1983 et seq. to redress deprivation by the Defendants under color of state law of the rights, privileges, and immunities secured by the statutes and the constitution of the United States of America." In the paragraphs that follow, Plaintiff alleges myriad failures and wrongdoings of Defendants.[6] However, at no point in the SAC or in her memoranda opposing summary judgment does Plaintiff, identify the particular "rights, privileges, and immunities secured by the statutes and the constitution of the United States of America" of which Fowler and Ashby allegedly deprived Steed.

The Civil Rights Act of 1871 authorizes civil actions against any person who under color of state law deprives another person of the rights guaranteed under the

---

[6] These allegations include: failure to protect; failure "to provide the decedent with reasonable regard to his safety and life, as an innocent bystander;" failure to follow MSHP policies, practices, statutory requirements, and regulations; subjection of the Explorer and its occupants to lethal, reckless, and malicious force; causing Steed's death by carelessness, unskillfulness, recklessness, malice and harmful intention; creation and exacerbation of a dangerous condition; and, failure to exercise reasonable care.  Plaintiff further alleges that Defendants acted with negligence, recklessness, gross negligence, deliberate indifference and with an intent to collaterally harm innocent bystanders by: failure to train; failure to supervise; failure to provide adequately for the safety and well-being and life of an innocent bystander; failure to heed a witness' warnings when she reported a dangerous and unsafe condition; failure to train, supervise and monitor staff; failure to adopt a comprehensive fatality prevention process for pursuits that involve innocent bystanders; operation of emergency vehicles in violation of statutory mandates; and, failure to properly and accurately report a police matter. Finally, Plaintiff alleges that the circumstances resulting in Steed's death were aggravated by the acts of Defendants that "were grossly negligent, reckless, careless, imprudent, excessive and with an intent to harm and totally without though[t] as to the safety and welfare of innocent bystanders and with complete indifference to or conscious disregard to the safety of others."

Constitution or Laws of the United States. 42 U.S.C. § 1983. The statute does not create any substantive rights; rather, it provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). Thus, a plaintiff must identify the federally guaranteed right the defendant violated. *Id.* at 271 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Plaintiff's scattershot and largely redundant allegations leave the Court guessing as to which, if any, underlying federal right is at issue. The Court will very briefly address possible claims that it is able to discern: failure to protect, failure to intercede, failure to accurately report a police matter, failure to train and supervise, and excessive force.

A § 1983 claim for Ashby and Fowler's alleged failure to train or supervise was pleaded in Count III, as was a § 1983 claim for Ashby and Fowler's alleged excessive force in Count II. The Court already fully analyzed these claims and found that Ashby and Fowler are entitled to summary judgment on each.

As for a claim for failure to protect or intercede, the Eighth Circuit has stated, "outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations." *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013). As discussed in the Court's analysis of Count

II, Plaintiff has no viable excessive force claims; therefore, Plaintiff has no

grounds for a failure to protect or intercede claim.

"There is no constitutional right to an accurate police report." *Harmon v. St.*

*Louis Cty.*, No. 4:08CV226SNLJ, 2009 WL 880024, at *3 (E.D. Mo. Mar. 30,

2009) (citing *Shock v. Tester,* 405 F.2d. 852, 855 (8th Cir.1969). "Such action only

constitutes a due process violation when the alleged falsified report leads to an

unconstitutional deprivation of life, liberty, or property." *Id.* (citing *Landrigan v.*

*Warwick,* 628 F.2d. 736, 745 (1st Cir.1980)). Here, Steed's death necessarily

preceded the drafting of any alleged inaccurate police report about his death. A

deprivation of Steed's constitutional rights resulting in his death could not be based

on a later-drafted police report. No claim based on a police report exists.

The Court, having generously parsed and examined those possible grounds

on which a § 1983 claim in Count VI could be based, finds that Ashby and Fowler

are entitled to summary judgment as to Count VI.

Qualified Immunity

Ashby and Fowler also argue that Court should grant them qualified

immunity. "The doctrine of qualified immunity protects government officials

'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The entitlement is an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Because the Court found in it preceding analysis of Plaintiff's § 1983 claims that neither Ashby nor Fowler violated Steed's constitutional rights, Ashby and Fowler are entitled to qualified immunity.

Dismissal of Counts VII and VIII – State Law Claims

With respect to Plaintiff's remaining Missouri state law claims, the Court will decline to exercise supplemental jurisdiction, the basis for the Court's jurisdiction.  The remaining claims are state law-based claims of negligence and negligence *per se*. "A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has 'dismissed all claims over which it has original jurisdiction.'" *Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016) (quoting 28 U.S.C. § 1367(c)(3)). The factors a court should consider in deciding whether to exercise jurisdiction over pendent state law claims are "judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered...will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*. at 350 n. 7, 108 S. Ct. 614; see also *id*. (stating that the factors to be

25

considered under the pendent jurisdiction doctrine "usually will favor a decision to relinquish jurisdiction when 'state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought' " (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). When declining to exercise supplemental jurisdiction under § 1367(c), the court can decide to dismiss the remaining claims without prejudice or remand those claims to state court. *Lindsey v. Dillard's, Inc*., 306 F.3d 596, 599 (8th Cir.2002); *St. John v. Int'l Ass'n of Machinists & Aerospace Workers,* 139 F.3d 1214, 1217 (8th Cir.1998); *Graham v. Hubbs Mach. & Mfg., Inc.*, No. 4:14-CV-419 (CEJ), 2016 WL 2910209, at *8 (E.D. Mo. May 19, 2016). Based on the factors outlined above, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims. Said claims will be dismissed without prejudice.

## Conclusion

Plaintiff failed to show that there is any genuine dispute of fact that is material to whether Fowler and Ashby violated Lavoy Steed's constitutional rights. Fowler and Ashby are entitled to qualified immunity and to judgment as a matter of law on those § 1983 claims that were the subject of this motion, i.e. Counts I, II, III, IV, and VI.

As all other federal claims against Ashby, Fowler, and MSHP were previously dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses them without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 112] is **granted** as to Plaintiff's federal claims (Counts I, II, III, IV, and VI).

**IT IS FURTHER ORDERED** that Plaintiff's remaining claims (Count VII and VIII) are dismissed without prejudice.

A separate Judgment  and dismissal in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 22nd day of May, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE